OPINION OF THE COURT
B. Marc Mogil, J.
DECISION AFTER TRIAL
This is an action by plaintiff contractor to recover the *318 unpaid balance due on a home improvement contract in the amount of $5,855 from defendant homeowner. As a defense and counterclaim, defendant alleges the negligent, improper and defective performance of the contract in violation of the State and local building codes and the issuance of a voidable certificate of occupancy (hereinafter C of O).
The defendant demands $39,500 in compensatory damages for breach of contract and for a second counterclaim demands punitive damages in the amount of $100,000. The plaintiff contends in support of the complaint and as a defense to the counterclaim that he substantially performed the contract. The trial of this action was held on March 11, 1987 and March 16, 1987, after which the court reserved its decision.*
One of the issues the court must determine is whether or not a home improvement contract, otherwise silent, contains an implied agreement that the contractor will perform the contract in conformance with applicable State and local building code requirements.
FINDINGS OF FACT
From the credible evidence adduced at trial, the court finds the following to be the salient facts of the case: The parties entered into a written contractual agreement on June 8, 1986 for the construction of a 12 foot by 12 foot extension to defendant’s house, with a raised wood deck, sliding glass doors and a gas-fired barbecue. The contract also provided for various other alterations and home improvements to their existing dwelling. The total amount agreed upon for these improvements was $22,560.
The contract consists of a list of items, some typed, some handwritten, with a price after each item. There is no provision regarding obtaining a building permit, except a notation "plairs [sic] and permit $500 Dep.”, nor compliance with any building codes. Handwritten on the agreement is a provision that the material and labor are guaranteed for a full year.
Plaintiff testified in support of this action that he "substantially complied” with the terms of the contract. The defen *319 dont, on the other hand, introduced the testimony of an expert contractor witness (Marazzo), the original draftsman hired by the plaintiff for the project (Iannone), and the chief zoning inspector for the Town of Oyster Bay (Mr. Pankoff), all of whom testified that they inspected the alterations and found them to be defective. The witnesses testified, inter alla, that the crawl space beneath the addition built by plaintiff is between 11 and 14 inches high, some 4 to 7 inches less than the 18 inches mandated by the State building code. According to all witnesses (including the plaintiff), the 18-inch height is necessary to permit inspection underneath the addition for structural deterioration. The zoning inspector, Mr. Pankoff, testified that this defect is a clear violation of the building code. The plaintiff admits that the height is less than the required 18 inches. The plaintiff also admits that there were other violations and problems during construction: he admits sealing the framing of the addition where substantial problems are now concluded to exist without the prior inspection of the Building Department, his own draftsman, or his own architect. The plaintiff’s architect (Hochberg) did not appear at the trial although subpoenaed by defendant. Interestingly, plaintiff did not feel it necessary to himself obtain the presence of his architect to explain his course of conduct on the project.
The subpoenaed records of the building inspectors from the Department of Planning and Development of the Town of Oyster Bay (hereinafter DPD) indicate serious defects in the roof of the addition and that the plumbing at the site was not done by a licensed plumber, though later corrected. It is not disputed that the plaintiff had represented to defendant that the plumbing-related work would be done by a licensed plumber, although he personally was not so licensed.
The reports also indicate that a C of O was originally denied because the construction had been "closed up”. The reports indicate the a C of O had been denied because no frame inspection could be made, the headers and rafters could not be checked, and that the cathedral ceiling on the addition had no ventilátion for roof and ceiling. By letter dated April 15, 1986, the DPD advised the defendant that an affidavit from a licensed engineer or architect certifying that the construction complied with the approved building plans and the New York State Uniform Fire Prevention and Building Code was necessary in order to obtain a C of O. This was required because no *320 visual inspection could be made by the DPD, a condition solely created by the plaintiff contractor.
Thereafter, the affidavit of plaintiff’s architect Hochberg, sworn to on December 22, 1986, was submitted to the DPD. Hochberg certified, inter alla, that he had inspected the location, that he had seen the approved building plans, that upon the inspection of the completed alteration and upon information supplied by the (plaintiff) contractor, that the alteration was installed in conformity with the approved plans, the State Fire Prevention and Building Code and generally approved construction practices. This court’s initial reaction to such affidavit was and remains that it manifested one of several conditions: wanton perjury; negligently drawn; or incorrectly drawn owing to misleading or improper statements to said architect by the plaintiff contractor.
On January 6, 1987, a C of O was issued by the DPD, in reliance upon the above affidavit, for a oné-story addition at the rear of defendant’s premises and for a raised wood deck with sliding doors to the dwelling with a gas-fired barbecue. As stated above, plaintiff’s architect did not appear at the trial to testify on behalf of the plaintiff, nor did he deign to appear pursuant to proper subpoena served upon him by the defendant.
The plaintiff admits that he made representations to Hochberg that the work was performed according to approved plans and building code requirements, when in fact they were not. Plaintiff does not dispute that neither he, his architect, nor his draftsman or any other agent did a grade survey of the land, although defendant’s witnesses testified that a grade survey was necessary to properly build the extension. It is not disputed that plaintiff made structural changes which deviated from the original town-approved plans without filing an amendment with the DPD.
Tangentially, it was shown at trial that plaintiff’s use of improper or incomplete materials in a gas line for the barbecue caused a gas leak which was corrected by LILCO; that the steps leading down from the existing main dwelling to the addition are 4 inches high each, when defendant claims that they originally agreed upon 6-inch and 8-inch steps, respectively, a figure which appears in the filed plans. The plaintiff, in retort, claims that any and all changes in the plans were agreed to by the defendant and his wife. The court, however, credits the testimony of the defendant, who claims he did not agree to any such alterations.
*321 CONCLUSIONS OF LAW
The crux of the plaintiffs argument in support of the complaint and in defense of the counterclaims is that he substantially performed the contract.
In order for a building contractor to be able to take advantage of the doctrine of substantial performance, he must not be guilty of a willful or intentional departure from the terms of his contract. (See generally, 22 NY Jur 2d, Contracts, §§ 317-320; 36 NY Jur 2d, Damages, § 51, at 92, and cases cited therein.) This doctrine, however, permits compensation for all defects caused by the contractor’s performance. (Supra, citing Spence v Ham, 163 NY 220.) Under this rule the party sued is protected as to any damages he may suffer due to the contractor’s failure to strictly perform and is entitled to the amount of damages in an action by the contractor. (Supra.) The contractor must prove that the defects or omissions were unsubstantial. (Spence v Ham, supra.) This he has not done.
Although the written agreement does not expressly provide that the contract be performed in conformance with State and local fire prevention and building code regulations, the plaintiff is obligated to perform the contract as though such conformance was an express term of the contract.
Article 18 of the Executive Law of the State of New York, known as the New York State Uniform Fire Prevention and Building Code Act (L 1981, ch 707, § 1) and regulations promulgated thereunder (9 NYCRR part 650), as adopted by the Town of Oyster Bay (Executive Law § 386; Code of Ordinances, Town of Oyster Bay § 6-06), was enacted to ensure minimum protection to life and property by establishing adequate minimum standards for fire protection, construction, maintenance and use of materials in buildings. (Executive Law § 371.)
Although the contract for home improvements did not expressly prescribe that the construction be performed in compliance with building code requirements, it must be presumed thát the parties intended that the contract be performed in accordance with State and local laws. Consonant with such a presumption, it has been held that: "All contracts are made subject to any law prescribing their effect, or the conditions to be observed in their performance” (Strauss v Union Cent. Life Ins. Co., 170 NY 349, 356).
Moreover, this county’s Consumer Affairs Law expressly prohibits home improvement contractors from any willful or deliberate disregard of the building code of the State or any *322 municipality. (Nassau County Administrative Code § 21-11.9 [6].)
Thus, in every home improvement contract, the contractor has an implied duty to perform the contract in accordance with fire prevention and building code requirements. The consumer homeowner relies upon the building contractor’s skill and expertise to perform the alterations and improvements. Plaintiff’s failure, in the case at bar, to construct the extension to code requirements renders the alteration illegal and frustrates the purpose of the contract.
The doctrine of substantial performance has no application therefore under these facts. The rule is an equitable one intended to prevent injustice where a contractor inadvertently caused trivial, minor, nonessential deficiencies which may be easily and inexpensively remedied. (22 NY Jur 2d, op. cit., at 197-198; Crouch v Gutmann, 134 NY 45, 55.)
Where the defect cannot be corrected without partially reconstructing the building, the doctrine of substantial performance does not apply. (Spence v Ham, 163 NY 220, supra; 22 NY Jur 2d, op. cit., at 198.)
The effect of plaintiff’s failure to strictly perform the contract herein is to render the extension illegal. There was proof that the extension as constructed does not comply to building code requirements and that the C of O was issued without inspection based upon misrepresentations by plaintiff to his architect. Accordingly, it has been shown that any request for a new or currently revised C of O from the town will be denied unless the defect of an improper crawl space is corrected. In order to correct the defect, the floor of the extension must be removed, the walls braced, excavations undertaken to remove additional earth, and the concrete and floor rebuilt. These corrections are tantamount to reconstructing the addition. The plaintiff has not therefore shown either complete or substantial performance.
Turning to defendant’s first counterclaim, the court finds from the evidence adduced at trial that plaintiff failed to perform the contract in a professional, skillful and workmanlike manner. In every construction contract, notwithstanding the absence of express terms as to performance, there is an implied promise to perform the contract in a skillful and workmanlike manner. (Milau Assocs. v North Ave. Dev. Corp., 42 NY2d 482.) In addition to plaintiff’s admissions regarding changes and covering over of certain problems, it was shown *323 at trial by testimony of defendant’s contractor witnes (Marazzo) that a grade survey of the land should have been done before the extension was built. The plaintiff admits that he did not do one. Plaintiff was bound by the contract to a duty of reasonable care and competency generally owed by construction companies. (Luckoff v Sussex Downs, 104 AD2d 636, citing Milan Assocs. v North Ave. Dev. Corp., supra.) From the preponderance of the evidence adduced at trial, the court finds that the plaintiff negligently and defectively performed the contract.
DAMAGES
The proper measure of damages for breach of a construction contract is the amount which will put the owner in as good a position as if the contract has been properly performed (Manniello v Dea, 92 AD2d 426). In this case the extension must be partially torn down and reconstructed in order to comply with the State and local building codes. Where a defect may be corrected, the measure of damages is the market price of completion or correcting the performance (Bellizzi v Huntley Estates, 3 NY2d 112; see generally, 36 NY Jur 2d, Damages, § 51, at 89-92).
The defendant’s expert witness testified that in order to correct the crawl space deficiency, the above previously delineated corrective measures have to be undertaken. The contractor for the defendant testified as to the cost of these corrections, and the court concludes that same will amount to $15,000.
The defendant, however, has not proved a cause of action for punitive damages. There has been no proof that the plaintiff’s conduct was either willful or malicious.
Accordingly, the court hereby grants judgment in favor of the defendant and against plaintiff on the complaint and the first counterclaim. Let judgment be entered in favor of the defendant and against the plaintiff in the amount of $15,000. The complaint and second counterclaim are hereby dismissed.

 The court notes at the outset that plaintiff failed to plead that he is licensed to do business as required by CPLR 3015 (e) and the Consumer Affairs Law of Nassau County (Nassau County Administrative Code § 21-11.0 et seq.). The court nonetheless concludes, however, from the evidence adduced at trial, that the plaintiff is licensed to do business in Nassau County and hereby deems the complaint amended to allege same.