■ JAMES MCKINNEY & SON, INC., Respondent-Appellant, v LAKE PLACID 1980 OLYMPIC GAMES, INC., et al., Appellants-Respondents, and KAHN AND JACOBS, HELLMUTH, OBATA AND KASSABAUM, P. C., et al., Respondents. — Cross appeals from an order of the Supreme Court at Special Term (Viscardi, J.), entered March 4, 1982 in Essex County, which partially granted plaintiff's motion to dismiss various affirmative defenses asserted by defendants and partially granted defendants' motions for summary judgment dismissing the complaint. On May 2, 1977, plaintiff James McKinney & Son, Inc. (McKinney), entered into a contract with defendant Lake Placid 1980 Olympic Games, Inc. (LPOG), to fabricate and erect certain steel structures for use in the construction of the Olympic Field House at Lake Placid. Defendant Gilbane Building Company (Gilbane) was named the project manager; defendant Kahn and Jacobs, Hellmuth, Obata and Kassabaum (Kahn) was designated as project architect; and defendant Jack D. Gillum Associates (Gillum) became design engineer. Plaintiff encountered difficulties in fulfilling its obligations and on or about March 31, 1978, LPOG terminated the contract. One week later plaintiff filed a petition in bankruptcy under chapter 11. Thereafter, Reliance Insurance Company (Reliance), plaintiff's surety, pursuant to a continuing agreement of indemnity which it had entered into with McKinney in 1974,

executed a take-over agreement with LPOG. Reliance's effort to complete the fieldhouse proved unsuccessful and on June 13, 1978, it effected a settlement with LPOG as a part of which the latter was to receive $700,000; the surety also released LPOG "from all claims, causes of action or suits, which it now or may have in the future, by assignment or otherwise, including * * * any claims, suits or causes of action arising out of" plaintiff's contract for the Olympic Field House. McKinney instituted this action in 1980 alleging four causes of action: breach of warranty by LPOG, Kahn and Gillum, fraud against LPOG and Gilbane, breach of contract occasioned by LPOG and Gilbane, and negligence on the part of all defendants. In their answers, defendants asserted several affirmative defenses, including a claim that Reliance and not plaintiff was the real party in interest, that plaintiff was barred from maintaining this suit because of the release furnished by Reliance, and that, as to certain defendants, the complaint failed to state a cause of action. These allegations formed the basis for defendants' subsequent motions, pursuant to CPLR 3212, for summary judgment dismissing the complaint. In turn, plaintiff cross-moved to dismiss the affirmative defenses. Special Term dismissed the complaint as to Kahn and Gillum, the breach of contract and breach of warranty actions aimed at LPOG, and the breach of contract action against Gilbane. Left standing, without prejudice to a later motion for summary judgment, were the fraud and negligence charges leveled at LPOG and Gilbane. Since we believe all of the causes of action directed at LPOG should have been dismissed, we modify accordingly. Dismissal of the complaint, in its entirety, as against LPOG is required for the release executed by Reliance bound plaintiff. By the terms of the continuing agreement of indemnity plaintiff agreed: "To assign, transfer and convey * * * as of the date of execution of said Bond or Bonds, as collateral security for the full performance of the covenants and agreements here contained and the payment of any other indebtedness or liability of the undersigned [plaintiff] to the Surety, whether heretofore or hereafter incurred * * *: All rights of the undersigned [plaintiff] in or growing in any manner out of, said contract". A subsequent provision in the agreement gave the surety: "[A]ll right and authority, in the event the Contractor fails or is unable to complete the work called for by the contract guaranteed by any Bond or in the event of the breach of any provision of this Agreement to execute on behalf of and sign the names of each of the undersigned to, any voucher, release, satisfaction, check, bill of sale of all or any property by this Agreement assigned to the Surety". Although the indemnity agreement did not constitute an instantaneous and complete assignment of all contract rights to Reliance, it explicitly countenanced the immediate assignment of all rights, including the specific right to release plaintiff's claims, "growing in any manner out of [the] contract" at the moment plaintiff failed to perform. Since this assignment occurred, at the very latest, when the contract was terminated by LPOG, the release executed by the assignee Reliance is binding upon plaintiff (see *Underhill Constr. Corp. v Muller Constr. Co.*, NYLJ, Sept. 15, 1976, p 11, col 1, affd *sub nom. Underhill Constr. Corp. v New York Tel. Co.*, 56 AD2d 760, affd 44 NY2d 666; *Petrossi Bros. Contr. Corp. v Town of Greece*, 29 NYS2d 305). The insinuation that the release lacks efficacy for it was not executed on plaintiff's behalf, as required by the indemnity agreement, is contradicted by the very language of the release itself which covers all causes of action against gained "by assignment" arising out of the Olympic Field House contract. And though plaintiff was a debtor in possession under chapter 11 at the time, nothing in the record suggests that because of this fact Reliance was, therefore, powerless to provide a release circumscribing plaintiff's right to sue on the fieldhouse contract. Moreover, with respect to Gilbane, plaintiff is the real party in interest. Plaintiff's agreement, reflected in a proposed amended plan of ar-

rangement before the Bankruptcy Court, promising Reliance two thirds of the proceeds of any recovery had against LPOG as well as the right to have Reliance designate counsel, does not make the latter the real party in interest (see *Fairchild Hiller Corp. v McDonnell Douglas Corp.,* 28 NY2d 325). Because there was no contractual relationship between Gilbane and plaintiff, an action for breach of contract does not lie. However, the fraud and negligence allegations assert legitimate causes of action. Gilbane, as project manager and, therefore, agent for LPOG, may still be liable on the fraud count if in making the alleged misrepresentations, it assumed authority on its own account or expressly obligated itself (*Underhill Constr. Corp. v New York Tel. Co., supra; Laska v Harris,* 215 NY 554). While plaintiff has not submitted affidavits indicating such conduct, neither has Gilbane proffered evidence sufficient to support its motion. In these circumstances, denial of Gilbane's motion without prejudice to a further summary judgment motion was appropriate. In resisting the negligence cause of action, Gilbane points to *Alvord & Swift v Muller Constr. Co.* (NYLJ, Sept. 15, 1976, p 7, col 4, affd 56 AD2d 761, affd 46 NY2d 276). There, the court rejected a subcontractor's attempt to bring a negligence claim against architects who had contracted to provide services to the owner of the construction project. While *Alvord & Swift* amply supports dismissal of the negligence action against Kahn and Gillum, Gilbane's responsibilities under the contract appear to be such as to establish a duty of due care to subcontractors like plaintiff. As project manager, Gilbane was required to "manage, supervise, and inspect the construction". Furthermore, it was obligated to review the drawings and specifications for the contract, "to continuously review the design during its development", and to identify "defects of commission or omission in the design". These duties can reasonably be said to inure to the benefit of subcontractors as well as the owner for the former are " 'members of a limited class' " whose reliance upon the project manager's ability is clearly foreseeable (*White v Guarente,* 43 NY2d 356, 362). Finally, the absence of a contractual relationship or any other independent duty between plaintiff and Kahn and Gillum renders the breach of warranty claim against those entities untenable (*Underhill Constr. Co. v New York Tel. Co., supra*). We have considered the parties' other arguments and find them to be without merit. Order modified, on the law, by reversing so much thereof as denied, in part, defendant Lake Placid 1980 Olympic Games, Inc.'s motion for summary judgment dismissing the complaint, and said motion granted in its entirety, and, as so modified, affirmed, with costs to said defendant against plaintiff. Mahoney, P. J., Sweeney, Main, Mikoll and Yesawich, Jr., JJ., concur.