OPINION OF THE COURT
David O. Boehm, J.
This action, brought by Northrup Contracting, Inc. (Northrup) against the defendants, Village of Bergen (village) and MRB Group, P. C. (MRB), arises out of a construction project known as the Bergen Waste Water Collection Project.
In 1983 MRB, an engineering group, was retained by the village to design the project, prepare plans, specifications and contract documents for use by the village in soliciting bids, and to provide administration, inspection and other engineering services during the construction phase. Included in the preliminary work performed by MRB was the excavation of various test pits to determine subsurface conditions.
Northrup was declared the low bidder on 1 of the 5 prime contracts, and on February 15, 1983 signed a contract with the village. The contract incorporated the bidding documents, drawings, plans, and technical specifications. Northrup was required by the contract to follow the plans and specifications prepared by MRB in performing the work and was also required to execute the work under MRB’s supervision.
After commencing work, Northrup encountered excessive subsurface water in the course of two boring operations. In each instance Northrup made a claim for extra expenses incurred due to the high ground water. Both claims were ultimately settled and change orders executed.
Because work on the project was delayed pending resolution of Northrup’s second claim for extra expenses, the boring involved could not be completed without interfering with the nearby wells used by Comstock Foods, the major industry in the village, in its seasonal operations. Accordingly, on June 25, 1985 MRB sent instructions to Northrup to cease work on the boring until November 22, 1985 and to go on with other aspects of the job in the interim.
Several days later Northrup gave notice to the village that it intended to terminate the contract in 10 days, stating that its performance had been delayed and disrupted by the village and MRB in dealing with the ground water problems. Thereafter, Northrup did no further work on the project, and commenced this action against the defendants.
Although both defendants moved to dismiss the complaint, *437 this opinion addresses only MRB’s motion to dismiss for failure to state a cause of action. The gravamen of this motion is MRB’s assertion that Northrup’s claims against it must fail because it owed no duty, contractual or otherwise, to Northrup.
Although MRB cites a multitude of out-of-State cases in support of its position, denial of its motion is compelled by the Court of Appeals pronouncement on the subject in Credit Alliance Corp. v Anderson & Co. (65 NY2d 536).
The law requires, as a predicate for noncontractual recovery against the agent of another party, "either a relationship of contractual privity * * * or a relationship sufficiently intimate to be equated with privity” (Credit Alliance Corp. v Anderson & Co., supra, at 543). The latter relationship may arise out of the knowledge by and the intent of the agent that its work product will be relied upon by persons in a "settled and particularized” class (White v Guarente, 43 NY2d 356, 363).
According to the complaint, MRB prepared the drawings, plans and specifications, the general and special conditions and the associated bidding and contract documents for use by the village in soliciting public bids and in the construction of the project; MRB knew and intended that prospective bidders would rely upon the contract documents, which detailed the scope and nature of the construction work; plaintiff relied upon these documents in preparing and submitting its bid; these documents were expressly incorporated in the agreement entered into between the village and the plaintiff; MRB administered and inspected the progress of construction; MRB was responsible for considering all requests for change orders and equitable adjustments during construction; and MRB certified to the village in July 1985 that there was sufficient cause to terminate plaintiff’s employment as the project contractor.
These allegations, deemed to be true and in large part reinforced by the evidentiary material submitted with the motion papers, sufficiently established the required nexus between the plaintiff and MRB and, therefore, adequately state a cause of action.
As already stated, knowing and intended reliance upon the agent’s work product is sufficient to create the essential bond approaching privity which allows the imposition of noncontractual liability (Credit Alliance Corp. v Anderson & Co., 65 *438 NY2d 536, supra; see also, White v Guarente, 43 NY2d 356, supra; Glanzer v Shepard, 233 NY 236). In this case, as in Glanzer, the preparation of the drawings, plans, specifications and other contract documents was the "end and aim of the transaction” (Glanzer v Shepard, supra, at 238-239). Here, too, as in Credit Alliance Corp., the complaint and plaintiff's affidavit "allege both [MRB’s] awareness of a particular purpose for their services and certain conduct on their part creating an unmistakable relationship with the reliant plaintiff” (Credit Alliance Corp. v Anderson & Co., supra, at 554).
What makes the plaintiff’s position even stronger is its claim that MRB’s involvement did not end with the preparation of the contract documents, that, indeed, it remained involved in a very direct and significant way during the project construction. It was MRB’s continuing supervision, the negligent manner in which it was performed, and the tortious interference with plaintiff’s contract, the complaint alleges, that caused the plaintiff to suffer damages.
This conclusion is not arrived at in disregard of Credit Alliance Corp. (supra) and Westpac Banking Corp. v Deschamps (66 NY2d 16). However, as I read these cases, the criteria which they established for liability are applicable only to accountants. In both Credit Alliance Corp. and Westpac Banking Corp., the Court of Appeals emphasized that the three prerequisites which must be satisfied for noncontractual liability were in furtherance of the policy considerations that "accountants should not have a duty to the public at large.” (Westpac Banking Corp. v Deschamps, supra, at 19, 20; see also, Henry v Guastella & Assocs., 113 AD2d 435, 437.)
No such policy considerations exist with respect to MRB’s liability to plaintiff, the contractor of a project which MRB not only planned and blueprinted but also actively supervised. Thus, in McKinney & Son v Lake Placid 1980 Olympic Games (92 AD2d 991, mod on other grounds 61 NY2d 836), liability in negligence was upheld in favor of a subcontractor against the project manager who was required to manage, supervise and inspect the construction, review the contract drawings and specifications, continuously review the design during its development and identify defects of commission or omission in the design. "These duties can reasonably be said to inure to the benefit of subcontractors as well as the owner for the former are ‘members of a limited class’ whose reliance upon the project manager’s ability is clearly foreseeable (White v Guar *439 ente, 43 NY2d 356, 362).” (McKinney & Son v Lake Placid 1980 Olympic Games, supra, at 993.)
In light of the fact pattern of this case, the authorities cited by MRB do not support a contrary result. Indeed, one of the cases cited, although barring a direct action, would permit the plaintiff to bring a third-party action for contribution against MRB in the village’s claim against the plaintiff (Crow-Crimmins-Wolff & Munier v County of Westchester, 90 AD2d 785) thereby preserving the status of MRB as a party to the lawsuit.
MRB’s motion to dismiss the complaint is, therefore, denied.
[Portions of opinion omitted for purposes of publication.]