OPINION OF THE COURT
Dillon, J.
An accountant is not immune from liability to a lender for *423 negligence in reviewing a borrower’s financial statements and rendering an uncertified report (Review Report), but where, as here, the lender failed to offer evidence of a relationship sufficiently approaching privity between the lender and the accountant, summary judgment was properly granted to the accountant (see, Credit Alliance Corp. v Andersen & Co., 65 NY2d 536).
Plaintiff, William Iselin & Co., Inc. (Iselin), is a corporation engaged in factoring and commercial finance. In 1976 Iselin began acting as a factor for Suits Galore, Inc. (Suits), a manufacturer of women’s suits and sportswear. In the course of the business relationship, Iselin made secured loans to Suits and purchased its accounts receivable. Additionally, between 1976 and 1981, Iselin extended up to $1 million annually to Suits in unsecured "overadvances”, which consistently were repaid in the same year in which they were made.
Defendant Mann Judd Landau (Mann) is a national accounting firm which was initially engaged by Suits in 1979 to review and report on Suits’ financial statements on an annual basis. At some point following completion by Mann of its Review Report for Suits’ fiscal year ending May 31, 1982, Iselin came into possession of a copy of the Report. Thereafter, Iselin increased Suits’ overadvance line to $2 million. By June 1983, however, the level of unsecured overadvances had actually reached $3.4 million. On July 28, 1983, Mann issued its Review Report for Suits’ fiscal year ending May 31, 1983. Following Iselin’s receipt of the Report in mid-September 1983, Iselin informed Suits that the overadvance level must be substantially reduced. In December 1983, Suits was unable to meet its financial obligations and filed for protection under the bankruptcy laws. Much of its outstanding debt to Iselin remained unpaid.
Iselin commenced this action against Mann, claiming negligence, gross negligence and fraud in the preparation of the Review Reports. The complaint alleges that Mann knew that Iselin was acting as a factor for Suits; knew that the Reports were to be used by Suits to induce Iselin to extend credit and make loans to Suits; knew that Iselin intended to rely upon the Reports in its financial transactions with Suits; and that as a consequence of its reliance upon the Report’s financial statements, which allegedly overstated inventory, understated liabilities and failed to disclose the diversion of corporate assets, Iselin was damaged in the amount of $2,565,000.
*424 After extensive discovery, Mann moved for summary judgment. Supreme Court granted Mann’s motion to the extent of dismissing the causes of action for gross negligence and fraud, but denied the motion on the negligence cause of action. The court found that there were questions of fact whether Mann was aware that its Reports were to be used by Suits to obtain credit and loans from Iselin, and whether Mann was aware that Iselin would rely upon the Reports in its financial dealings with Suits. On appeal from only that part of the order denying summary judgment on the negligence cause of action, the Appellate Division reversed, one Justice dissenting, and granted the motion, holding that Iselin failed to satisfy the test established in Credit Alliance Corp. v Andersen & Co. (65 NY2d 536, 551, supra) for holding an accountant liable to a noncontractual party for negligent preparation of financial reports. We granted leave to appeal to plaintiff and, for reasons that follow, we affirm.
Preliminarily, we note that a Review Report is not to be equated with the traditional certified audit.[1] The latter requires the auditor’s certification that the audit was performed under generally accepted accounting standards (GAAS) to ensure that the financial statements and the underlying information contained in those statements are reliable, and that the statements were prepared according to generally accepted accounting principles (GAAP). Reviewing and reporting a client’s financial statements is a relatively new accounting *425 procedure established in 1978 by the American Institute of Certified Public Accountants. The accountant’s review is not performed under GAAS; no physical inventory is taken; the review consists principally of inquiries of the client’s management and analysis of financial information supplied by the client. The report offers only the limited assurance that the accountant is not aware of any material modifications that should be made to the client’s financial statements in order for them to conform with GAAP (see, American Institute of Certified Public Accountants Statement on Standards for Accounting and Review Services No. 1, § 100 et seq. [1978]).
While the essential character of a Review Report thus differs from that of the traditional audit, the accountant nevertheless has a duty to exercise due care in performance of its engagement. That duty runs primarily, of course, to the party contracting for the accountant’s services. In the absence of a contractual relationship between the accountant and the party claiming injury, the potential for accountant liability is carefully circumscribed. In Credit Alliance Corp. v Andersen & Co. (65 NY2d 536, supra), we said that accountants may be held liable to noncontractual parties who rely to their detriment on negligently prepared financial reports only when certain prerequisites are satisfied: "(1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants’ understanding of that party or parties’ reliance” (Credit Alliance Corp. v Andersen & Co., supra, at 551). In sum, the noncontractual party must demonstrate a relationship with the accountants "sufficiently approaching privity” (see, Westpac Banking Corp. v Deschamps, 66 NY2d 16, 19).
In moving for summary judgment, Mann was required to establish its defense " 'sufficiently to warrant the court as a matter of law in directing judgment’ ” in its favor (CPLR 3212 [b]; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067). Mann met that burden by demonstrating the absence of either a contract or a relationship approaching privity with Iselin. To defeat the motion, Iselin was required to produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact (Zuckerman v City of New York, 49 NY2d 557) on each of the elements of the Credit Alliance test. Notably, "mere conclusions, expressions of hope *426 or unsubstantiated allegations or assertions are insufficient” for that purpose (Zuckerman v City of New York, supra, at 562).
In applying those well-established principles, we conclude that the Appellate Division properly granted summary judgment to defendant Mann. Iselin was obligated to submit evidence of Mann’s awareness that Suits, intending that Iselin would rely on the Reports, would use them for the purpose of procuring credit from Iselin. Beyond that, Iselin was required to show a nexus with Mann from which Mann’s understanding of Iselin’s reliance could be drawn.
In a failed effort to meet those prerequisites, Iselin offers the 1979 engagement letter from Mann to Suits; evidence of Mann’s knowledge that Iselin was acting as a factor for Suits; a number of communications beginning in June 1983 between Mann and Iselin, the substance of which is not disclosed; the conclusory statement of Iselin’s president that throughout the period of those communications, Mann was aware that Iselin was predicating its credit decisions upon the Review Reports; and a hearsay assertion by a Mann partner to the effect that on one occasion in the period 1979-1983, Mann sent a Review Report to Iselin at Suits’ request.
That part of the engagement letter from Mann to Suits which is relied upon by Iselin recites: "During the period of our engagement we will undoubtedly receive credit inquiries and requests for current financial information from banks, Factors, converters, or any other source from whom you would expect to receive credit. It is understood that we have your permission to use our judgment in disclosing whatever information we believe necessary under the circumstances.” While that language may be evidence of an incidental or collateral purpose of the contractual relationship between Mann and Suits (see, Ultramares Corp. v Touche, 255 NY 170),[2] it is no evidence of the purpose to be served by the Review Reports. Indeed, Iselin makes no showing that Mann was employed by Suits for the purpose of inducing Iselin to extend credit, and no proof is submitted showing an intention that Iselin should rely on the Reports in doing so. Nor is it shown that the Review Reports were prepared for Iselin’s use or according to *427 Iselin’s requirements (see, Credit Alliance Corp. v Andersen & Co., 65 NY2d 536, 553, supra).
No evidence in admissible form is offered showing a link between the parties from which Mann’s awareness of Iselin’s reliance may be drawn. The conclusory assertion by Iselin’s president that Mann knew of Iselin’s reliance is clearly insufficient to defeat summary judgment on that critical issue; and even if it were properly shown that a Review Report was sent by Mann to Iselin at Suits’ request, the single act of sending the Report at an undetermined time for an unknown purpose would not satisfy the burden of coming forth with evidence evincing Mann’s understanding of Iselin’s reliance (compare, European Am. Bank & Trust Co. v Strauhs & Kaye, 65 NY2d 536, 554).
Reviewing the whole of Iselin’s submission, we find nothing in relation to the contacts between Mann and Iselin which would establish a nexus between them sufficiently approaching privity (Credit Alliance Corp. v Andersen & Co., supra, at 553-554). Thus, no material issue of fact has been presented requiring a trial.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

. Both Review Reports contained in the record make clear the difference. For example, the report of defendant Mann Judd Landau to Suite Galore, Inc. for fiscal year ending May 31, 1982, recites:
"We have reviewed the accompanying consolidated balance sheets of Suite Galore, Inc. and subsidiary as of May 31, 1982 and 1981, and the related consolidated statements of income and retained earnings and changes in financial position for the years then ended, in accordance with standards established by the American Institute of Certified Public Accountants. All information included in these financial statements is the representation of the management of Suite Galore, Inc. and subsidiary.
"A review consists principally of inquiries of Company personnel and analytical procedures applied to financial data. It is substantially less in scope than an examination in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the consolidated financial statements taken as a whole. Accordingly, we do not express such an opinion.
"Based on our reviews, we are not aware of any material modifications that should be made to the accompanying consolidated financial statements in order for them to be in conformity with generally accepted accounting principles.”

. Ultramares provides an example of incidental or collateral purpose. There, the accountants’ work product was to be exhibited generally to "banks, creditors, stockholders, purchasers or sellers, according to the needs of the occasion” (255 NY 170, 173-174).