242

MORSE/DIESEL, INC. and Helena Erectors, Incorporated, Plaintiffs,

Helena Erectors, Incorporated, Plaintiff–Appellee,

v.

TRINITY INDUSTRIES, INC., Aetna Insurance Co. and Mosher Steel Company, Defendants,

Trinity Industries, Inc., Defendant–Appellee.

TRINITY INDUSTRIES, INC., Third–Party Plaintiff–Appellee,

v.

JOHN PORTMAN ASSOC., Weidlinger Assoc., Inc., Helena Erectors, Incorporated, St. Lawrence Cement Co., A.J. McNulty & Co., Inc., Blakeslee Prestress, Inc. and Morse/Diesel, Inc., Third–Party Defendants,

Helena Erectors, Incorporated, Third–Party Defendant–Appellee.

Appeal of ST. LAWRENCE CEMENT CO., A.J. McNulty & Co., Inc. and Blakeslee Prestress, Inc., Third–Party Defendants–Appellants.

Nos. 841, 792, Dockets 87–7660, 87–7662.

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1988.
Decided Sept. 26, 1988.

Harold F. McGuire, Jr., New York City (McGuire & Tiernan, Arthur V. Nealon, New York City, Heron, Burchette, Ruckert & Rothwell, Thomas A. Rothwell, Jr., Joseph A. Vicario, Jr., Joseph P. Esposito, Washington, D.C., of counsel), for third-party defendant-appellant St. Lawrence Cement Co.

Kevin D. Slakas, New York City (Peckar & Abramson, New York City, of counsel), for third-party defendants-appellants Blakeslee Prestress, Inc. and A.J. McNulty & Co., Inc.

Andrew Fisher, Brooklyn, N.Y. (Fisher & Fisher, Freddy R. Weidmann, Brooklyn, N.Y., of counsel), for third-party plaintiff-appellee Trinity Industries, Inc.

Cecil Holland, Jr., New York City (Hart & Hume, New York City, Watt, Tieder, Killian & Hoffar, Robert K. Cox, John B. Tieder, Jr., Douglas C. Proxmire, Vienna, Va., of counsel), for plaintiff and third-party defendant-appellee Helena Erectors, Inc.

Before TIMBERS, KEARSE and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Third-party defendants-appellants Blakeslee Prestress, Inc. ("Blakeslee"), St. Lawrence Cement Co. ("St. Lawrence") and A.J. McNulty & Co., Inc. ("McNulty") appeal from an interlocutory order of the United States District Court for the Southern District of New York, Shirley Wohl Kram, *Judge,* denying their motions to dismiss the third-party claims of third-party plaintiff-appellee Trinity Industries, Inc. ("Trinity"), and the claims and cross-claims of plaintiff and third-party defendant-appellee Helena Erectors, Inc. ("Helena"), for failure to state a claim upon which relief can be granted.

In two diversity actions, *Morse/Diesel, Inc. v. Trinity Industries, Inc. ("Morse/Diesel")* and *Helena Erectors, Incorporated v. Trinity Industries, Inc. ("Helena Erectors"),* Trinity and Helena assert claims for negligent performance of contractual duties or negligent misrepresentation against Blakeslee, St. Lawrence and McNulty. Trinity sought direct damages, indemnity and contribution from Blakeslee, St. Lawrence and McNulty. Helena sought direct damages from Blakeslee, and contribution from Blakeslee, St. Lawrence and McNulty. Despite the absence of contractual privity between the adverse parties, the district court held that the complaints alleged sufficiently close working relationships among the parties, who were subcontractors with various roles in the same construction project, to allow recovery for economic loss under New York law.

Pursuant to 28 U.S.C. § 1292(b) (1982 and Supp. IV 1986), the district court certified to this court, and a panel of this court permitted appeal of, "that portion of [the district court's] order which ruled that Blakeslee, McNulty and St. Lawrence could be held liable to Trinity and Helena for economic loss in the absence of privity of contract." *Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 664 F.Supp. 91, 95 (S.D.N.Y. 1987). We reverse and remand for dismissal of all claims by Trinity and Helena against Blakeslee, St. Lawrence and McNulty.

### Background

*Morse/Diesel* and *Helena Erectors* arise out of various alleged construction defects, delays, and other problems relating to a project for the construction of a hotel, the Times Square Hotel (now the Marriott Marquis), located on Broadway between West

45th and West 46th Streets in New York, New York. In 1982, the Times Square Hotel Company, a partnership and owner of the hotel, entered into a prime contract with Morse/Diesel, Inc. ("Morse"), the general construction contractor on the project. The owner also entered into a separate contract with an architect, John Portman Associates, Inc. ("Portman"), which in turn entered into a subcontract with a structural engineer, Weidlinger Associates, Inc. ("Weidlinger"). Morse, as general contractor, also entered into agreements with several subcontractors for various aspects of the construction:

1. Trinity—furnishing, fabrication and erection of structural steel; installation of precast concrete plank and metal deck; fabrication of steel connector clips;

2. Blakeslee—manufacture and shipping of precast concrete planks;

3. St. Lawrence—fabrication of precast concrete panels; design of steel connector clips to attach panels to structural steel; and provision of plans, drawings and specifications for their use;

4. McNulty—installation of precast concrete panels.

Finally, Trinity entered into a subcontract with Helena to hoist, erect and install the structural steel, metal decking and precast concrete planks, and receive and hoist the steel stairs.

In the two main actions for breach of contract, both commenced in August, 1984, Morse is suing Trinity in *Morse/Diesel* for "failing to complete its work in a timely manner, completing other work in a defective manner, and failing to pay for work performed by others;" and Helena is suing Trinity in *Helena Erectors* for *"inter alia,* failing to deliver structural steel in a timely manner, delivering nonconforming structural steel, failing to coordinate Helena's work with that of other subcontractors, and failing to provide Helena with accurate drawings and specifications." *Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 655 F.Supp. 346, 351 (S.D.N.Y.1987).

Trinity filed various counterclaims against Morse in *Morse/Diesel* and Helena in *Helena Erectors.* In both actions, Trinity also filed third-party claims against a number of parties. Trinity's third-party claims against Blakeslee, St. Lawrence and McNulty are before us on this appeal. With respect to each of these third-party defendants, Trinity sought damages for negligence in connection with the performance of their subcontracts with Morse, and indemnity [1] or contribution with respect to any ultimate liability on Trinity's part to Morse and/or Helena.

Trinity also filed a third-party claim against Helena in *Morse/Diesel,* thus making Helena a third-party defendant in that action. Helena then filed, *inter alia,* cross-claims against third-party defendants Blakeslee, St. Lawrence and McNulty which are before us on this appeal. In each instance, Helena alleged negligence by the subcontractor in the performance of its subcontract with Morse, and sought contribution with respect to any ultimate liability on Helena's part to "Trinity or others." A direct claim for damages resulting from negligence, however, was pleaded only against Blakeslee.

In *Helena Erectors,* after Trinity filed third-party claims against Blakeslee, St. Lawrence and McNulty, Helena filed claims against these third-party defendants which paralleled Helena's cross-claims against these parties in *Morse/Diesel.*

The gist of Trinity's and Helena's claims for negligence against Blakeslee is that Blakeslee delivered concrete planks—which Trinity and Helena had contractual duties to erect and install—in an untimely manner, in improper sequence, and in defective condition. As a result of Blakeslee's alleged negligence, Trinity and Helena claim

---

**1.** Trinity's claims for indemnification were dismissed in Judge Kram's initial opinion, *Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 655 F.Supp. 346, 360–61 (S.D.N.Y.1987), and were not considered in the subsequent opinion on reargument, *Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 664 F.Supp. 91 (S.D.N.Y.1987). They have not been briefed or argued on appeal, and are not considered in this opinion.

that they incurred additional expenses and suffered substantial delay.

Trinity's and Helena's negligence claims against St. Lawrence allege that St. Lawrence failed to provide the plans, drawings and specifications for steel connector clips —which were to be fabricated by Trinity— in a timely manner. As a result, they claim that Trinity had to install the clips at the construction site instead of at its manufacturing facility, thus causing additional expense and substantial delays in Trinity's performance and possible liability of Trinity and Helena to third parties.

Finally, Trinity's and Helena's claims against McNulty are essentially for negligent misrepresentation. It is alleged that prior to commencing attachment of the precast concrete panels to the steel structure of the hotel, McNulty surveyed the steel structure and advised Morse that the placement of the steel connector clips was improper, and that McNulty was therefore unable to install the precast concrete panels. They allege that McNulty's survey was erroneous, and that as a result of McNulty's negligent misrepresentations to Morse, Trinity was required by Morse to retain another firm to survey the steel structure and the placement of connector clips. They further allege that McNulty's negligent misrepresentations caused substantial delay of the project, thereby exposing Trinity and Helena to liability to third parties.

Neither Trinity nor Helena is in direct privity of contract with either Blakeslee, St. Lawrence or McNulty. Rather, Trinity, Blakeslee, St. Lawrence and McNulty are all subcontractors of Morse, and Helena is a subcontractor of Trinity. In an effort to overcome the conceded lack of contractual privity, however, Trinity and Helena point to the following provisions of the subcontracts between Morse and Blakeslee, St. Lawrence and McNulty:

ARTICLE 4—Scheduling

\* \* \*

The Contractor [Morse] shall have the right to schedule other work at the same time and in the same area as the Subcontractor's Work. The Subcontractor shall coordinate its Work with any other subcontractors' work in such manner as the Contractor may direct to avoid conflict or interference with such work of others, shall participate in the preparation of coordinated drawings of congested areas and shall conform the Work to the work of other subcontractors to prevent discrepancies (and to avoid unnecessary cutting or patching) with contiguous work.

\* \* \*

ARTICLE 5—Progress

5.1 The Subcontractor shall keep itself informed at all times of the progress of the Project, and of the progress of others whose work may affect, or who may be affected by, its progress.

\* \* \*

ARTICLE 6—Timing

\* \* \*

The Subcontractor ... shall perform its obligations under this Agreement with diligence and with sufficient manpower to maintain the progress of the Work as scheduled, without delaying other trades or areas of work.

Trinity and Helena also bring to our attention the following provision of the "general conditions" applicable to all Morse subcontracts for this project:

ARTICLE 5, SUBCONTRACTOR'S
RESPONSIBILITIES

\* \* \*

E. The Owner has reserved the right to let other contracts, and the Contractor reserves the right to let other subcontracts, in connection with the Project. The Contractor and each subcontractor shall afford any such other contractors and subcontractors access to the Project and a reasonable opportunity for introduction and storage of their materials and for the execution of their work. Each subcontractor shall properly connect and coordinate his work with the work of any such other contractors and subcontractors....

Blakeslee, St. Lawrence and McNulty stress with equal vigor the following provi-

sion in all the relevant subcontracts with Morse:

ARTICLE 19—No Third Party Beneficiary

Except as otherwise provided herein, no provision of this Agreement shall in any way inure to the benefit of any third person (including the public at large) so as to constitute any such person a third party beneficiary of this Agreement or any one or more of the terms hereof or otherwise give rise to any cause of action in any person not a party hereto.

Blakeslee, St. Lawrence and McNulty, as well as Portman and Weidlinger, against whom Trinity and Helena asserted similar claims, moved to dismiss the claims against them pursuant to Fed.R.Civ.P. 12(b)(6). In a memorandum opinion and order dated March 7, 1987, Judge Kram denied all motions to dismiss negligence claims, with one exception. *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 655 F.Supp. 346, 353–59 (S.D.N.Y.1987).[2] The district court held, *inter alia*, that the third-party defendants had a duty to Trinity and Helena to perform their contracts without negligence, even absent contractual privity, and that Trinity and Helena could recover for economic loss. The court relied upon New York cases that, in the court's words, "indicate that close, foreseeable, intentional involvement between a contracting party and a third party creates a duty on the part of the contracting party to the third party to act with care." *Id.* at 357. The court concluded that the claims in question alleged sufficiently close relationships between the third-party defendants and Trinity and Helena to create a duty of care under New York law. Judge Kram also denied the motions to dismiss the claims for contribution, but granted the motions to dismiss Trinity's claims for indemnification. *Id.* at 360–61.

The third-party defendants, including Portman and Weidlinger, moved for reargument in the district court. Relying upon this court's intervening opinion in *Widett v. U.S. Fidelity and Guar. Co.*, 815 F.2d 885 (2d Cir.1987), the third-party defendants argued that the district court erred in holding that the architect (Portman), structural engineer (Weidlinger) and other construction subcontractors (Blakeslee, St. Lawrence, and McNulty) could be liable in negligence for purely economic loss, absent privity of contract.

In a June 26, 1987 memorandum opinion and order, the district court held that *Widett*, which concerned the liability of an architect to a third party, required dismissal of the negligence claims against Portman and Weidlinger. *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 664 F.Supp. 91, 94 (S.D.N.Y.1987). The court, however, concluded that *Widett's* strict application of New York's privity requirement "involves the provision of professional services." *Id.* The court therefore adhered to its earlier decision that dismissal was not required with respect to Blakeslee, St. Lawrence and McNulty, as to whom the complaints alleged a sufficiently "close relationship ... which gives rise to the duty of care." *Id.*

The district court nevertheless acknowledged that there was "substantial ground for difference of opinion as to its ruling," *id.* at 95, and therefore, explicitly finding that the conditions of 28 U.S.C. § 1292(b) (1982 and Supp. IV 1986) were met, certified "that portion of its [prior] order ... which ruled that Blakeslee, McNulty and St. Lawrence could be held liable to Trinity and Helena for economic loss in the absence of privity of contract" for interlocutory appellate review. *Id.* The court also stayed all proceedings against those third-party defendants pending resolution of the appeal. On August 11, 1987, a panel of this court granted permission to appeal pursuant to 28 U.S.C. § 1292(b) (1982 and Supp. IV 1986).

For the reasons hereinafter stated, we reverse and remand with instructions to

---

**2.** Judge Kram held that Trinity's complaint did not make out a claim for negligent misrepresentation against St. Lawrence because "Trinity fails to allege that St. Lawrence provided Trinity or anybody else with information." *Id.* at 355.

This ruling did not affect Trinity's negligence claim against St. Lawrence for supplying the plans, drawings and specifications for steel connector clips in an untimely manner.

dismiss the remaining claims of Trinity and Helena against Blakeslee, St. Lawrence and McNulty.

## Discussion

### A. *Direct Liability.*

██ All parties agree that New York law applies in this diversity case. *See Widett v. U.S. Fidelity and Guar. Co.*, 815 F.2d 885, 886 (2d Cir.1987).

We deal first with the claims of Trinity and Helena for damages resulting directly to them from the negligence of Blakeslee, St. Lawrence and McNulty. Trinity states such claims against all three third-party defendants; Helena does so only against Blakeslee.

In *Widett*, we recently addressed the liability of an architect to a subcontractor under New York law where both were engaged in the same project but there was no privity between them. *Widett* proceeded from the general premise that "in New York, ... professionals are not liable either in tort or contract absent privity." *Widett*, 815 F.2d at 886 (citing *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931)).[3] We noted that New York has crafted a limited exception to the privity requirement as to liability of accountants, *see Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985); *White v. Guarente*, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977),[4] but concluded that New York was not prepared to extend this exception to architects, based upon four cases in which New York courts dismissed subcontractor claims against architects with whom the subcontractors were not in privity. *Widett*, 815 F.2d at 887.[5] Based upon *Widett*, the district court in this case dismissed the claims of Trinity and Helena

against Portman, the architect, and Weidlinger, Portman's subcontractor. *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 664 F.Supp. 91, 94 (S.D.N.Y.1987). These dismissals are not before us on this appeal.

*Widett* is not dispositive, however, with respect to the issues that we must now decide, in view of its carefully crafted limitation to the issue of architect liability. Indeed, one of the cases cited in *Widett* precluded liability of an architect to a subcontractor, but nonetheless ruled that the subcontractor had stated claims for fraud and negligence against another subcontractor that had been designated "project manager." *See James McKinney & Son, Inc. v. Lake Placid 1980 Olympic Games, Inc.*, 92 A.D.2d 991, 461 N.Y.S.2d 483 (3d Dep't 1983), *modified on other grounds*, 61 N.Y.2d 836, 473 N.Y.S.2d 960, 462 N.E.2d 137 (1984). In so ruling, the court stated with respect to the negligence claim:

> As project manager, Gilbane was required to "manage, supervise, and inspect the construction". Furthermore, it was obligated to review the drawings and specifications for the contract, "to continuously review the design during its development", and to identify "defects of commission or omission in the design". These duties can reasonably be said to inure to the benefit of subcontractors as well as the owner for the former are "members of a limited class" whose reliance upon the project manager's ability is clearly foreseeable (*White v. Guarente*, 43 N.Y.2d 356, 362, 401 N.Y.S.2d 474, 372 N.E.2d 315).

92 A.D.2d at 993, 461 N.Y.S.2d at 486.

A similar ruling was made more recently in *Northrup Contracting, Inc. v. Village of Bergen*, 139 Misc.2d 435, 527 N.Y.S.2d

---

**3.** Different standards apply where physical injury, rather than purely economic loss, occurs. *See Schiavone Constr. Co. v. Elgood Mayo Corp.*, 81 A.D.2d 221, 227–34, 439 N.Y.S.2d 933, 937–40 (1st Dep't 1981) (Silverman, J., dissenting), *rev'd*, 56 N.Y.2d 667, 451 N.Y.S.2d 720, 436 N.E.2d 1322 (1982) (adopting dissenting opinion of Silverman, J.).

**4.** Since *Widett*, the New York Court of Appeals has reaffirmed both the existence and the limit-

ed nature of this exception. *See William Iselin & Co. v. Landau*, 71 N.Y.2d 420, 527 N.Y.S.2d 176, 522 N.E.2d 21 (1988).

**5.** *Widett* held out the possibility, however, of liability of an architect to a subcontractor, even absent privity, in the event of direct communication between them, a client relationship, or other special circumstances. *Widett*, 815 F.2d at 887.

670 (Sup.Ct. Monroe Cnty., 1986), *modified on other grounds*, 129 A.D.2d 1002, 514 N.Y.S.2d 306 (4th Dep't 1987). There the court denied a motion to dismiss a complaint by a subcontractor against another subcontractor where, although privity was absent, the defendant subcontractor was retained "to design the project, prepare plans, specifications and contract documents for use by the Village [of Bergen, the prime contractor] in soliciting bids, and to provide administration, inspection and other engineering services during the construction phase." *Northrup*, at 436, 527 N.Y.S.2d 670. The plaintiff "was required to follow the plans and specifications prepared by MRB [the defendant], and was also required to execute the work under the supervision of MRB." *Id.* at 436, 527 N.Y.S.2d 670. The defendant had authority to instruct the plaintiff to "cease work," *id.* at 437, 527 N.Y.S.2d at 671, or to certify to the project owner "that there was sufficient cause to terminate plaintiff's employment," *id.* at 437, 527 N.Y.S.2d at 671, and the defendant "was responsible for considering all requests for change orders and equitable adjustments during construction." *Id.*

Under the circumstances, the court concluded that there was " 'an unmistakable relationship with the reliant plaintiff.' " *Id.* at 437, 527 N.Y.S.2d at 671 (quoting *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 554, 483 N.E.2d 110, 120, 493 N.Y.S.2d 435, 445 (1985)). The court compared the defendant subcontractor's role to the active supervision of the project manager in *McKinney*, and quoted *McKinney* to the effect that "[t]hese duties can reasonably be said to inure to the benefit of subcontractors as well as the owner." *Id.* at 438, 527 N.Y.S.2d at 672 (quoting *McKinney*, 92 A.D.2d at 993, 461 N.Y.S.2d at 486).

Accepting as true Trinity's and Helena's allegations, however, we find nothing in this case approaching the relationship between the parties in *McKinney* and *Northrup*. All three third-party defendants here were subcontractors with discrete, circumscribed roles in the overall construction project. Blakeslee had no duties on the construction site at all, certainly no supervisory duties; its role was confined to manufacturing precast concrete planks and shipping them to the site. St. Lawrence also had no supervisory duties. Its only obligation, in addition to manufacturing the precast concrete panels, was to design steel connector clips and provide plans, drawings and specifications for their use. These were essentially architectural or design duties generally not inuring to the benefit of third parties under New York law. *Widett*, 815 F.2d at 887; *Edward B. Fitzpatrick, Jr. Constr. Corp. v. County of Suffolk*, 138 A.D.2d 446, 448, 525 N.Y.S.2d 863, 865 (2d Dep't 1988) (citing *Widett*); *Ossining Union Free School Dist. v. Anderson LaRocca Anderson*, 135 A.D.2d 518, 521, 521 N.Y.S.2d 747, 750 (2d Dep't 1987) (citing *Widett*).

The case is a little closer with regard to McNulty. Like Blakeslee and St. Lawrence, McNulty had no general supervisory duties akin to those found in *McKinney* and *Northrup;* rather, its obligation was limited to the installation of precast concrete panels. In fulfilling this duty, however, McNulty notified Morse/Diesel of alleged problems with the steel clip placement that rendered McNulty unable to install the concrete panels. This did place McNulty, to a very limited degree, in the position of one subcontractor reviewing the work of another. It is clear, nevertheless, that review of Trinity's clip placement was by no means " 'the end and aim of the transaction,' " *Northrup*, 139 Misc.2d at 437, 527 N.Y.S.2d at 671 (quoting *Glanzer v. Shepard*, 233 N.Y. 236, 238–39, 135 N.E. 275, 277 (1922)), but was merely an incident to installation of the panels. *Cf. William v. Iselin & Co., Inc. v. Landau*, 71 N.Y.2d 420, 426 & n. 2, 527 N.Y.S.2d 176, 179 & n. 2, 522 N.E.2d 21, 23–24 & n. 2 (1988) (no liability to third party from incidental or collateral purpose of accounting engagement).

Finally, the provisions of the subcontracts between the third-party defendants and Morse/Diesel argue strongly against liability to third parties. Although, as Trinity and Helena properly contend, various

provisions of those subcontracts (Article 4, Scheduling; Article 5, Progress; Article 6, Timing; Article 5 of General Conditions, Subcontractor's Responsibilities) reflect and envision coordinated effort by the various subcontractors, the explicit negation of third party beneficiary obligations in Article 19, see *supra* p. 11, weighs far more heavily in the balance. Under New York law, where a provision in a contract expressly negates enforcement by third parties, that provision is controlling. *Edward B. Fitzpatrick, Jr. Constr. Corp. v. County of Suffolk*, 138 A.D.2d 446, 447, 525 N.Y.S.2d 863, 866 (2d Dep't 1988); *Nepco Forged Products, Inc. v. Consolidated Edison Co.*, 99 A.D.2d 508, 508, 470 N.Y.S.2d 680, 681 (2d Dep't 1984); *Schuler–Haas Electric Corp. v. Wager Constr. Corp.*, 57 A.D.2d 707, 707, 395 N.Y.S.2d 272, 274 (4th Dep't 1977).

We conclude that the direct claims of Trinity against Blakeslee, St. Lawrence and McNulty, and of Helena against Blakeslee, should have been dismissed.

### B. *Contribution.*

■ A question arises whether the issue of contribution is presented to this court pursuant to 28 U.S.C. § 1292(b) (1982 and Supp. IV 1986). Judge Kram certified "that portion of [the district court's] order in *Morse/Diesel I* [, 655 F.Supp. 346 (S.D.N.Y.1987),] which ruled that Blakeslee, McNulty and St. Lawrence could be held *liable to Trinity and Helena* for economic loss in the absence of privity of contract." *Morse/Diesel, Inc. v. Trinity Indus. Inc.*, 664 F.Supp. 91, 95 (S.D.N.Y.1987) (emphasis added). This formulation appears addressed only to questions of direct liability between the named parties, rather than to contribution with respect to liability to third parties.

Our powers on an appeal under § 1292(b), however, "are not so narrowly circumscribed as to preclude consideration and resolution of questions other than

those specifically regarded as controlling by the district court at the time of its certification order." *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 994 (2d Cir.), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975). We are "not … required to answer the precise question certified by the district court since the certification statute does not require it; the certificate to the appellate court is that there is a controlling question of law, but the interlocutory appeal is from the order made below." *Slade v. Shearson, Hammill & Co.*, 517 F.2d 398, 400 (2d Cir.1974).[6] Given the close relationship between the questions of direct liability and liability for contribution here presented, principles of pendent appellate jurisdiction reinforce the view that we should exercise our discretion to resolve both issues on this interlocutory appeal. *See San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 255 (2d Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985).

■ Since the district court's decision, the New York Court of Appeals has construed New York's contribution statute, N.Y.Civ.Prac.L. & R. 1401 (McKinney 1976), as not permitting "contribution between two parties whose potential liability to a third party is for economic loss resulting only from a breach of contract." *Board of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 24, 523 N.Y.S.2d 475, 476, 517 N.E.2d 1360, 1361 (1987). The Court of Appeals made it clear that section 1401 creates a right of contribution only among joint tortfeasors.

The only obligations of the third-party defendants whose alleged breach gives rise to claims for contribution were contractual in nature, resulting from their respective subcontracts with Morse. *Sargent, Webster* accordingly precludes those claims. Trinity and Helena contend, however, that the third-party defendants were negligent in failing to perform these obligations with

---

6. Although Judge Kram certified a "portion" of her original order, *see Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 644 F.Supp. 91, 95 (S.D.N.Y. 1987), we deem this just another way of providing the description of the "controlling question of law" required by 28 U.S.C. § 1292(b) (1982 and Supp. IV 1986). We accordingly may, in our discretion, consider any aspect of the order from which this interlocutory appeal is taken.

due care, and are accordingly liable for contribution as tortfeasors under New York law. *Sargent, Webster* disposes of this contention, as well:

As we have recently explained, "[m]erely charging a breach of a 'duty of due care', employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim" (*Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 390, 521 N.Y.S.2d 653, 516 N.E.2d 190).

*Sargent, Webster*, 71 N.Y.2d at 29, 523 N.Y.S.2d at 479, 517 N.E.2d at 1365.

Any obligations which the third-party defendants failed to perform here were essentially contractual in nature. Such failure does not provide a basis to impose liability for contribution under New York law.

### Conclusion

The order of the district court is reversed and the case is remanded for dismissal of Trinity's claims for direct liability and contribution against Blakeslee, St. Lawrence and McNulty, and Helena's claims for direct liability against Blakeslee and contribution against Blakeslee, St. Lawrence and McNulty.