■ S.J.E. REALTY CORP., Appellant, v JOHN LANTZ et al., Respondents.—In an action, *inter alia,* to compel the specific performance of a contract for the sale of real property, the plaintiff appeals from an order of the Supreme Court, Orange County (Patsalos, J.), dated June 20, 1988, which denied its motion for summary judgment and granted the defendants' cross motion for summary judgment dismissing the complaint.

Ordered that the order is affirmed, with costs.

The plaintiff entered into a contract with the defendants on April 29, 1984 to purchase a 15-acre undeveloped parcel in the Village of Monroe known as the Valhalla subdivision. The contract was subject to the defendant sellers obtaining final subdivision approval from the village and entering into an agreement with the owners of three other proposed subdivisions to construct a water-pumping station. The village required the construction of a pumping station to serve these subdivisions, and the parties acknowledged in the contract that the owners of the four affected subdivisions had an unenforceable, oral understanding to share the cost of construction.

With respect to the pumping station agreement, paragraph 9 of the contract rider stated in pertinent part: "The parties understand that a condition of approval by the Planning Board will require the construction of a water pumping station. * * * Although it is indirectly implied, this contract is conditioned upon said station being built and accepted by the local municipality. * * * This contract is conditioned upon Seller[s] entering into a binding agreement and for arrangement for the construction of said station and method of payment. * * * Seller[s] shall have ninety (90) days to enter into said agreement. * * * That if Seller[s are] unable to enter into the written agreement for the pumping station within ninety (90) days, then the $20,000.00 shall be returned to Purchaser. Seller[s] shall then have an additional year to seek to obtain said written agreement for the pumping station and final approval as previously set forth. * * * If Seller[s are] unable to accomplish the foregoing within the time limits set forth, then Seller[s] shall have the right to cancel this contract, return all sums paid without any additional liability".

The rider to the contract also contains the parties' express understanding that the date for closing "may be several years in the future". However, either party was permitted to terminate the contract if title did not close within 3½ years of the date of the contract.

By letter dated August 7, 1985, the sellers notified the buyer that they were exercising the right to cancel the contract because they were unable to obtain a pumping station agreement within the 1-year-and-90-day period. By letter dated August 27, 1985, the buyer's attorney informed the sellers that the buyer was willing to close title without a pumping station agreement. The letter further stated: "However, I must have final subdivision approval which your client has not obtained". The buyer commenced this action in January 1986 for specific performance of the contract, and the parties both sought summary judgment in 1988. Documentation submitted by the parties indicates that the affected subdivision owners, including the sellers, entered into a pumping station agreement in July 1986. The Village Planning Board granted final approval to the Valhalla subdivision on July 21, 1986, conditioned upon an agreement being reached between the owners of the four subdivisions and the village on installation of a proper water system. A letter dated April 8, 1988 from the county Department of Health indicated that it had not yet approved plans for construction of the pumping station.

The court properly awarded the sellers summary judgment dismissing the complaint. Pursuant to the terms of the contract, the sellers were to retain ownership of a portion of the subdivision land from which five lots could be created. Because the sellers retained ownership of lots in the subdivision, the conditions in the contract with respect to the pumping station agreement and final subdivision approval were not solely for the benefit of the buyer and could not be waived without the sellers' consent (see, e.g., Lieberman Props. v Braunstein, 134 AD2d 55; Bonavita & Sons v Quarry, 126 AD2d 707). The sellers therefore had the absolute right to terminate the contract when the pumping station agreement was not reached within the allotted time (see, Bonavita & Sons v Quarry, supra; Castaldo v Dalmazio, 129 AD2d 548).

The buyer contends that the sellers acted in bad faith by failing to timely enter into a pumping station agreement. We find that the allegations and documents submitted by the buyer are insufficient to present triable issues of fact which would defeat the sellers' cross motion for summary judgment (see, e.g., Iselin & Co. v Mann Judd Landau, 71 NY2d 420;

*Zuckerman v City of New York,* 49 NY2d 557). In an affidavit, one of the sellers detailed his objections to the 1985 draft pumping station agreement. The buyer failed to offer evidence which would establish that these objections were made in bad faith, nor did the buyer offer admissible proof that the other affected subdivision owners were prepared to sign the pumping station agreement within the allotted time.

In view of our decision, we need not reach the issue of whether specific performance should be denied in any event because the sellers could terminate the contract based on the fact that final subdivision approval was not obtained within the outside closing date of 3½ years from the date of the contract. Mangano, J. P., Lawrence, Kunzeman and Eiber, JJ., concur.