■ CITY SCHOOL DISTRICT OF THE CITY OF ELMIRA, Respondent, v McLANE CONSTRUCTION COMPANY, INC., et al., Respondents, and WEYERHAEUSER COMPANY, Defendant and Third-Party Plaintiff-Appellant. J. H. BAXTER COMPANY, Third-Party Defendant. — Appeal from a judgment of the Supreme Court in favor of plaintiff, entered December 27, 1979 in Chemung County, upon a verdict rendered at Trial Term (Swartwood, J.). In 1976, the Elmira school district contracted with McLane Construction Company, Inc., for the construction of a swimming pool building which was to feature a roof consist-

ing of natural wood decking supported by laminated wood beams. The appearance of the beams was central to the aesthetics of the architectural scheme as they were to contrast their natural beauty with the relatively stark unfinished concrete that comprised the balance of the structure. Even the effectiveness of the indirect lighting system employed in the building depended on the beams. As the building was to be a showplace, the site of large regional swimming competitions, the design was intentionally dramatic. It was contemplated that the beams, properly treated, would be essentially maintenance free. McLane contracted with defendant M. Matri & Sons, Inc., to supply and erect the beams. Matri in turn purchased them from Weyerhaeuser Company for delivery in August, 1976, at a contract price of $116,000. Though aware of the plans and specifications, Weyerhaeuser subcontracted for a method of treating the beams, known as the "Dow Process", which it knew would result in staining and discoloration. There was also evidence that Weyerhaeuser failed to have the beams cleaned before the subcontractor treated them and as a consequence dirt permeated the wood. When the beams arrived in Elmira in December, 1976, Weyerhaeuser's representative assured the school district that the clearly observable discoloration was merely road grime that could be cleaned. Based on these assurances, the school district, already in severe need of the beams to complete construction and thus protect against further loss from freezing temperatures, accepted them. It soon became apparent that the beams could not be adequately cleaned, but in fact were permanently discolored. This litigation ensued. The jury, which visited the pool area and viewed the beams, awarded $357,000 to the school district against Weyerhaeuser, $33,500 in favor of McLane against Weyerhaeuser, $3,200 in favor of Matri against McLane. The only issue of consequence is the proper measure of the school district's damages. The jury's verdict was in an amount equalling the total cost of replacing the unsightly beams. Weyerhaeuser maintains that the correct measure of damages is either the cost of repair (estimated at a maximum of $37,500) or the difference between the value of the structure as built and its value if the beams were as originally planned (approximately $3,000). As for the school district, it offered evidence which indicated that Weyerhaeuser's suggested alternative methods of repair were unsatisfactory or impractical. Moreover, it contends that these alternatives could prove even more expensive over the long term, for the beams would continue to require maintenance throughout their life expectancy of some 40 years. Plaintiff also argues that the diminution in value concept is inapplicable, for this structure is a specialty having no market value and Weyerhaeuser acted in bad faith and, furthermore, because its intentional deviation from the specifications was significant. We affirm. Where the contractor's performance has been incomplete or defective, the usual measure of damages is the reasonable cost of replacement or completion (*American Std. v Schectman*, 80 AD2d 318, 321). That rule does not apply if the contractor performs in good faith but defects nevertheless exist and remedying them could entail economic waste. Then, diminution in value becomes the proper measure of damages. A classic illustration of when the general rule is abandoned in favor of this exception is *Jacob & Youngs v Kent* (230 NY 239) where the contractor did not use the brand of pipe specified in the contract, but other brands of like quality. Inasmuch as the cost of replacing the pipe was grievously out of proportion to any damages actually suffered by the house owner, the proper award was the nominal difference in value of the house with and without the specified brand of pipe. But Weyerhaeuser does not come within this exception, for here the defect, in relation to the entire project, was not of inappreciable importance. One of the school district's principal objectives was to have an aesthetically

prepossessing structure, and that goal has by all accounts been frustrated. Moreover, as the facts already recited indicate, Weyerhaeuser's conduct cannot be said to be innocent oversight or inattention. Finally, we note that Weyerhaeuser had the burden of showing that its suggested alternative methods were less costly than a substantial reconstruction of the building (*Spence v Ham,* 163 NY 220, 226; *Pilgrim Homes & Garages v Fiore,* 75 AD2d 846, 847) and that the jury rejected Weyerhaeuser's evidence. Equally unconvincing are Weyerhaeuser's other arguments. The school district never waived its rights by accepting the beams in their defective condition, but rather specifically protested and then finally accepted the beams only after receiving Weyerhaeuser's assurances that the defects would be remedied. We also find nothing to warrant disturbing the jury's damages award to McLane for delays occasioned by Weyerhaeuser's actions. Similarly, the record adequately supports the jury's determination allowing Matri to recover $3,200 from McLane because it was required to obtain architectural rather than industrial grade beams. Judgment affirmed, with costs. Main, J. P., Mikoll, Yesawich, Jr., Weiss and Herlihy, JJ.