■ RONALD LUCKOFF et al., Respondents, v SUSSEX DOWNS, INC., Appellant, et al., Defendant. — In an action to recover damages for the negligent performance of a construction contract, defendant Sussex Downs, Inc. (Sussex) appeals from a judgment of the Supreme Court, Nassau County (Roncallo, J.), entered October 4, 1982, as amended by an order of that court dated September 30, 1983, which, after a nonjury trial, granted judgment to plaintiffs against defendant Sussex in the amount of $27,328.20.

Judgment, as amended, reversed, without costs or disbursements, and new trial granted to defendant Sussex solely on the issue of damages. The findings as to liability are affirmed.

On October 16, 1979, plaintiffs and defendant Sussex entered into a contract for the construction of a home for plaintiffs. Plaintiffs subsequently decided that they wanted certain modifications of the specifications contained in the original contract. One of these changes was for the installation on the exterior of the house of vertical cedar boards, rather than cedar shingles. Plaintiffs relied on Sussex's expertise in all matters concerning the installation of the boards, including the choice of the type of nails used, the manner of nailing and the distance between the nails. Plaintiffs took title to the house on June 17, 1980. In late February or early March, 1981, plaintiffs observed that there were black lines running from every nail head on the cedar boards, and that the boards were beginning to warp. Plaintiffs informed defendant Kobak, a builder employed by Sussex. Kobak told plaintiffs that he looked at the house and saw no problem, and did not know why they were complaining.

Sussex had used eight-inch tongue and groove cedar boards, secured by face nailing on the exposed surface. In May, 1981, a consulting engineer inspected plaintiffs' house and determined that the stains which were present in at least 75% of the board were the result of the rusting of the nails, caused by the quality

of the nails, in that they were not sufficiently galvanized, and the fact that they should have been "toe nailed", i.e., driven in between the tongue and groove where they meet on the diagonal.

By March, 1982, the stains and warping had increased, and some of the siding had come loose. The joints between the tongue and groove had opened, allowing water to enter behind the vertical siding.

Plaintiffs were advised by the consulting engineer that there was no way of removing the rust stains which were embedded in the wood, that if the condition was left uncorrected, the sheathing of the house would be seriously damaged, and that replacement of the boards was necessary.

"Accent on Landscaping" was hired to replace the boards. Six-inch boards, which are less prone to warping, were used. The boards were toe-nailed in the groove, with electroplated hot-tipped galvanized nails.

The trial court was correct in determining that Sussex had installed the boards improperly and failed to correct the condition within a reasonable time after being notified, compelling plaintiffs to correct the condition through another independent source. Defendant Sussex was bound by contract to a duty of reasonable care and competence owed generally by construction companies, and was obligated to perform in a workmanlike manner (*Milau Assoc. v North Ave. Dev. Corp.*, 42 NY2d 482). Accordingly, we affirm Trial Term's findings insofar as it found for plaintiffs on the issue of liability.

Turning to the issue of damages, the trial court awarded $23,000 plus costs and interest to plaintiffs, stating in its findings of fact that plaintiffs were required to pay $23,000 to replace the cedar boards. We have examined the record and conclude that there was insufficient competent evidence presented at trial to support this factual conclusion.

Although defendants did not present proof to dispute plaintiffs' assertion at trial that $23,000 was paid to "Accent on Landscaping" to replace the siding, the evidence presented by plaintiffs was incompetent to establish that this amount was spent. The contract between plaintiffs and "Accent on Landscaping" was admitted into evidence, over Sussex's objection, without a sufficient foundation. There was no authentication of the signatures on the contract, nor was there any *voir dire* concerning the circumstances of the signing of the contract. "Accent on Landscaping" was not a party to the action, and no one from "Accent on Landscaping" took the stand to testify that $23,000

was charged for the work, or that it had in fact signed the contract. The subcontractor who was hired by "Accent on Landscaping" to do the work testified on plaintiffs' behalf. He stated that he was paid $15,000 by "Accent on Landscaping" and that he believed plaintiffs were charged $23,000 by the contractor. Over Sussex's objection, he testified that he saw the bills which were given to plaintiffs, and that he was told by the owner of "Accent on Landscaping" that plaintiffs had paid in full. We deem this testimony, which was not based on firsthand knowledge, to be insufficient to establish the market price of correcting performance (see *Bellizzi v Huntley Estates,* 3 NY2d 112; *City School Dist. v McLane Constr. Co.,* 85 AD2d 749, mot for lv to app den 56 NY2d 504; 36 NY Jur 2d, Damages, § 51, p 89).

We reject Sussex's argument that the inadequacy of plaintiffs' proof on the issue of damages requires reversal of the judgment as to liability. Plaintiffs amply proved that the original work by Sussex was defectively performed and that they were required to hire another contractor to replace the siding. It is clear that plaintiffs suffered damages as a result of Sussex's breach. The fact that the trial court based its award on incompetent proof should not bar recovery (see, e.g., *Randall-Smith v 43rd St. Estates Corp.,* 17 NY2d 99, 106). Accordingly, we remit the matter to the Supreme Court, Nassau County, for a new trial with respect to defendant Sussex on the issue of damages. Niehoff, J. P., Rubin, Boyers and Eiber, JJ., concur.