NIAGARA MOHAWK POWER CORPORATION; Long Island Lighting Company; New York State Electric & Gas Corporation; Rochester Gas and Electric Corporation; and Central Hudson Gas & Electric Corporation, Plaintiffs,

v.

STONE & WEBSTER ENGINEERING CORPORATION, ITT Fluid Products Corporation, and ITT Fluid Technology Corporation, Defendants.

No. 88–CV–819.

United States District Court, N.D. New York.

Nov. 24, 1989.

See also 125 F.R.D. 578.

Hiscock & Barclay (Richard K. Hughes, of counsel), Syracuse, N.Y., Swidler & Berlin (John R. Ferguson, of counsel), Washington, D.C., for plaintiff Niagara Mohawk Power.

Kirkland & Ellis (James C. Munson, of counsel), Chicago, Ill., Hancock & Estabrook (Donald J. Kemple, of counsel), Syracuse, N.Y., for plaintiffs Long Island Lighting, New York State Elec. & Gas, Rochester Gas & Elec. and Cent. Hudson Gas & Elec.

Mudge Rose Guthrie Alexander & Ferdon (Harold G. Levison, of counsel), New York City, Costello Cooney & Fearon (Vincent O'Neil, of counsel), Syracuse, N.Y., for defendant Stone & Webster Engineering.

McNamee Lochner Titus & Williams (Scott A. Barbour, of counsel), Albany, N.Y., Hale & Dorr (James Quarles, III, of counsel), Washington, D.C., Pepper Hamilton & Scheetz, Philadelphia, Pa., for defendants ITT Fluid Products & ITT Fluid Technology.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

The five utilities who own, operate, and are tenants in common of the Nine Mile Point Two nuclear power plant in Scriba, New York, have brought suit against Stone & Webster Engineering Corporation ("SWEC"), ITT Fluid Products Corporation, and ITT Fluid Technology Corporation (collectively "ITT") to recover damages which allegedly resulted from defendants' faulty design and construction of the nuclear facility. In this diversity action the plaintiffs are asserting claims both in contract and tort. Currently before this court is a motion by the ITT defendants to dismiss the tort claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The central legal issue in this motion is whether, and to what extent, an independent cause of action sounding in tort exists under the laws of New York for the negligent or grossly negligent performance of contractual services.

As is well settled, when considering a motion to dismiss pursuant to Rule 12(b)(6), courts must construe the complaint's allegations in the light most favorable to the plaintiff and accept the well-pleaded factual allegations as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A claim will be dismissed under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts supporting his legal claim which entitle him to relief. *See Dahlberg v. Becker*, 748 F.2d 85, 88 (2nd Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

### I. Background

Taken as true, the complaint alleges the following: planning for the construction of the Nine Mile Point Two power plant ("NMP2") was initiated in 1971 when SWEC was hired by the plaintiffs as the architect/engineer and construction manager of the proposed nuclear facility. ITT Grinnell Corporation, whose successors in business are ITT Fluid Products Corporation and ITT Fluid Technology Corporation (complaint, para. 6) was awarded an initial contract for the field fabrication and erection of a large portion of piping at Nine Mile Point 2 in August of 1974. This first contract was signed in March of 1976 with work by ITT beginning that May. Complaint, para. 40. In all, three contracts were awarded to ITT. Complaint, para 19. According to the plaintiffs the contract required ITT:

to perform in a timely and cost-effective manner. ITT Grinnell expressly agreed

to do all things necessary for the proper construction of the piping work at NMP2, in accordance with applicable specifications and drawings, and to perform in a thorough and workmanlike manner. It further agreed to furnish all labor and qualified supervisory personnel and to provide overall direction and management. It agreed to cooperate with [the Niagara Mohawk Power Corporation], SWEC and the other contractors at the NMP2 site, to coordinate its work with other contractors and not to delay or hinder the progress of the work as a whole. These agreements were restated in a contract amendment effective December 21, 1981, along with the promise to work diligently in order to achieve the project schedule.

Complaint, para. 41.

In numerous places in the complaint the plaintiffs allege that ITT agreed to meet, yet failed to achieve, the "professional standards of construction practice" or, in other words, that ITT breached its "contractual and professional obligations" to the plaintiff utilities. Complaint, paras. 7, 8, 9, 22, 126, 131 and 133. Plaintiffs assert that ITT's performance with respect to the piping work was deficient in the areas of "overall management, engineering, construction supervision and quality control." Complaint, para. 126. The complaint asserts that ITT negligently performed contractual services in the following manner:

127. ITT Grinnell and SWEC breached their respective obligations to manage and supervise the piping work by failing to implement a timely and accurate management system. Neither ITT Grinnell nor SWEC coordinated efficiently the construction process or provided timely and accurate engineering drawings and related information. ITT Grinnell and SWEC repeatedly failed to provide accurate estimates and assessments of engineering and construction status, progress, and cost for the piping work.

128. ITT Grinnell's and SWEC's breach of their respective obligations to plan the piping work at NMP2 caused fabrication and installation of piping to fall behind schedule. In planning the piping work,

SWEC and ITT Grinnell misestimated the scope of work, and they agreed on "unit rates" (*e.g.*, manhours per pipe support) which they knew or should have known were unrealistically low.

131. In breach of its contractual and professional obligations, ITT Grinnell failed to manage or supervise its manual workers adequately. Consequently, workers failed to follow drawings and specifications. They omitted or mislocated materials, such as floor drain piping, pipe sleeves and plates, and failed to perform welding properly. ITT Grinnell's failure adequately to supervise workers allowed chronic absenteeism, early departures, and loss of tools.

132. Both SWEC and ITT breached their duties to implement adequate QA/QC programs, and SWEC breached its obligation to assure that ITT Grinnell implemented an effective QA/QC program. These breaches increased project costs.

133. ITT Grinnell breached its obligation to establish an adequate quality control program, resulting in an NRC stop-work order on all ITT Grinnell safety-related work. After the stop-work order had been lifted, QA/QC remained below professional standards in key respects. In May of 1982, an NRC inspector discovered that ITT Grinnell had issued an unapproved welding procedure for safety related work. This failure led to extensive reevaluating by SWEC of ITT Grinnell's work, diverting engineering resources.

134. ITT Grinnell radiographers falsified a number of weld radiographs, at both their shop and the site. The investigation, retesting, and rework resulting from ITT Grinnell's falsification of weld radiographs extended for almost a year, interfering with piping progress. The NRC's 1983 Construction Appraisal Team Inspection identified further deficiencies in ITT Grinnell's welding and weld inspections. The retesting and rework required to correct these deficiencies further impeded piping progress.

While ITT is repeatedly charged with breaching its professional obligations, the only conduct which could be construed as fraudulent on the part of ITT is described in paragraph 134 of the complaint (i.e. that weld radiographs were falsified).

Plaintiffs assert that they incurred substantial damages due to ITT's breaches of its "contractual and professional obligations." Complaint, para. 9. And, that as a "direct result" of these breaches added costs were incurred by the utilities due to (1) the redesign and reconstruction of systems and components; (2) excess man-hours; (3) additional overhead; (4) additional financing expenditures, and (5) delay. Complaint, para. 9 and 136. The cost of ITT's piping work under the principal contract, which was initially estimated at $40 million, exceeded over $300 million. Complaint, para. 21.

The complaint expressly states seven causes of action: four as against SWEC and three against ITT. Claims for breach of contract, negligence, and gross negligence have been asserted against both defendants. SWEC is also charged, in count three, with the tort of professional malpractice; no such cause of action is asserted against ITT.

The two tort claims which ITT seeks to have dismissed are stated in counts six (negligence) and seven (gross negligence). The operative language in the negligence claim is simply that "ITT Grinnell owed plaintiffs a duty to use ordinary care in performance of the piping work at NMP2. In the ways described above, ITT Grinnell's work fell below the standard of care exercised by piping contractors." Complaint, para. 155. In their claim for gross negligence plaintiffs assert that "ITT Grinnell's performance fell so far below the standard of care exercised by piping contractors, and evidenced such disregard for the rights of others, that it committed gross negligence in its work on NMP2." Complaint, para. 158.

## II. Discussion

The parties correctly agree that New York law applies in this diversity action.

See *Widett v. U.S. Fidelity and Guar. Co.*, 815 F.2d 885, 886 (2nd Cir.1987). Where federal jurisdiction is based upon diversity of citizenship the law of the State's highest court is determinative. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *PSI Metals, Inc. v. Fireman's Ins. Co.*, 839 F.2d 42, 43–44 (2nd Cir.1988).

This motion presents a difficult legal issue with which courts interpreting New York law have struggled: determining the circumstances under which "a party to a contract may be held liable in tort to another party thereto as a result of some clash in the contractual relationship." *Apple Records, Inc. v. Capital Records, Inc.*, 137 A.D.2d 50, 55, 529 N.Y.S.2d 279, 281 (A.D.1st 1988). ITT asserts that plaintiffs' tort claims should be dismissed because New York law will not permit "claims sounding in contract ... [to] be converted into claims sounding in tort merely by alleging that one party to a contract owed a duty of due care to another party in performing work pursuant to a contract." ITT's Mem. at 2. It is ITT's contention that the plaintiffs are impermissibly appending tort claims to a simple contract cause of action. Under ITT's analysis, the New York cases which contain language contrary to its position are simply wrong or distinguishable on the basis that the tort claims alleged therein would stand whether or not a contract was in existence (e.g., a claim based on fraud, intentional tort, breach of fiduciary duty, professional malpractice, tortious interference with contract, or injury to person or property outside the scope of the contract). ITT is asserting that the plaintiffs have failed to allege the existence of a tort duty, independent of contractual obligations, the breach of which is separately actionable under New York law.

Plaintiff utilities assert that their tort claims are cognizable under the law of New York. Their primary theory is that New York recognizes a tort for the negligent performance of contractual services—period. As will be discussed, the plaintiff is able to cite a number of cases, currently of questionable merit, which stand for this

general proposition. However, the plaintiffs have also been careful to assert a more delicate legal proposition, namely that "a tort liability could arise from a long enduring relationship between the parties, and from defendants' obligations toward property with which they were entrusted, though the entrustment was pursuant to a contract." Plaintiffs' Mem. at 14. Under this theory it is not the contract, but a special relationship of "trust and confidence" which may arise out of a long standing contractual relationship, that serves as the predicate for the existence of a tort duty of due care.

A. Tortious Performance of Contractual Services

■ Plaintiffs rely heavily on *Consolidated Edison Co. v. Westinghouse Elec. Corp.*, 567 F.Supp. 358 (S.D.N.Y.1983), to support their position that New York recognizes a cause of action for the negligent performance of contractual services. In *Consolidated Edison* an electric utility brought an action in both contract and tort against the company which, pursuant to a contract, had constructed and furnished a nuclear power plant. Defendant's motion to dismiss the negligence claim was denied by the court to the extent that the plaintiff had stated a claim for the negligent performance of contractual services. However, the motion was granted to the extent that the plaintiff alleged a tort claim for the negligent provision of goods under the contract. The court specifically held that there was a "cause of action recognized in New York for negligent performance of contractual services" and that "a suit for negligent performance of contractual duties is clearly available where only economic injury is alleged." *Id.* at 364.

In support of this proposition the *Consolidated Edison* court relied upon *Sears, Roebuck & Co. v. Enco Associates, Inc.*, 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (Ct.App.1977), *Paver & Wildfoerster v. Catholic High School Association*, 38 N.Y.2d 669, 382 N.Y.S.2d 22, 345 N.E.2d 565 (Ct.App.1976), and *Ajax Hardware Manufacturing Corp. v. Industrial Plants Corp.*, 569 F.2d 181 (2nd Cir.1977).

The district court held, that while both *Sears* and *Paver* involved a tort claim for professional malpractice in addition to a contract claim, the reasoning in those cases was not confined strictly to the context of professional malpractice, and instead, stood for the proposition that there generally is a tort for the negligent performance of contractual services. *Consolidated Edison*, 567 F.Supp. at 364. The better support for the district court's conclusion was found in *Ajax Hardware.*

In *Ajax Hardware* the Second Circuit considered an appeal of a lower court decision which dismissed a negligence claim on the basis that the claim was "completely merged in the alleged breach of the contract." *Id.* at 185. The contract in *Ajax Hardware* was one for the appraisal of certain machinery and, therefore, could be classified as a contract for services. The appellate court reversed the district court's ruling, citing Prosser and the Restatement (Second) of Torts, rather than New York law. Though little analysis was provided, the court held broadly that "[n]egligent performance of a contract may give rise to a claim sounding in tort as well as one for breach of contract" and thus both the contract and tort claim "may be submitted as alternatives to the jury." *Id.* Therefore, *Ajax Hardware* can reasonably be construed as standing for the proposition that the negligent performance of a contract for services states a cause of action in tort under New York law. *See also Robbins v. Ogden Corp.*, 490 F.Supp. 801, 807 (S.D.N.Y.1980) ("negligent performance of an undertaking to do work gives rise to an action in tort and for breach of contract").

*Trans Caribbean Airways, Inc. v. Lockheed Aircraft Service—International, Inc.*, 14 A.D.2d 749, 220 N.Y.S.2d 485 (A.D.1st 1961) also supports the plaintiffs' position. There, the court held in a brief *per curiam* opinion that "[a] person undertaking to perform work [pursuant to a contract] is charged with the common law duty to exercise reasonable care and skill in the performance of the work.... Negligent performance of the work gives rise to an action in tort and for breach of contract."

*Id.* at 749, 220 N.Y.S.2d at 486. However, two of the five judges on the panel dissented, asserting that the plaintiff's negligence claims should be dismissed for failure to allege a violation of a legal duty distinct from the mere breach of contractual obligations. *Id.* at 750, 220 N.Y.S.2d at 487 (citing *Rich v. New York Central & Hudson Riv. R.R. Co.*, 87 N.Y. 382).[1]

Even in light of these cases, this court does not find persuasive the plaintiffs' authority for the general proposition that there is always a tort cause of action for the negligent performance of contractual services. As discussed below: (1) courts in New York generally do not recognize a tort action for the breach of a simple contract be it for goods or services; (2) employing language familiar to tort law when describing a contractual breach will not transform a contract claim into one sounding in tort; (3) the nature of New York contract law is to hold parties to the benefit of their bargain; (4) negligence actions which seek recovery for purely economic loss, as opposed to damages for injury to person or property, are generally not cognizable in New York, and (5) most cases cited by the plaintiffs are distinguishable as asserting tortious conduct which is clearly independent of the contractual relationship.

(1) *The General Rule.* The courts in New York have long held that a contractual party *may, under certain circumstances,* be held liable in tort should the defective performance of contractual services by one contractual party injure the person or property of the other contractual party. Thus, the existence of a contract does not necessarily bar a tort claim. *See e.g., Lord Electric Co. v. Barber Asphalt Paving Co.*, 226 N.Y. 427, 432, 123 N.E. 756 (Ct. App.1919). The court in *Lord Electric* held that a cause of action sounding in tort, rather than contract, could be asserted against a subcontractor by a construction contractor for negligently causing fire damage to a bridge. The tort claim was permitted because the fire had damaged portions of the bridge which were not being erected by the subcontractor, and thus, were outside the scope of the subcontract. *Id.* at 430–32, 123 N.E. 756. New York courts have also held the reverse to be true; that "[i]t is no bar or answer to the claim of an action in contract that one in tort might have been and, ordinarily would be, brought for the acts really complained of." *Busch v. Interborough Rapid Transit Co.*, 187 N.Y. 388, 391, 80 N.E. 197, 198. In *Busch* a passenger was permitted to sue a public carrier in contract for damages resulting from an assault on him by employees of a common carrier while traveling on the carrier; the plaintiff's ticket was considered a contract. *Id.*[2]

---

1. Two remaining cases which are cited by the plaintiff may be distinguished. In *Luckoff v. Sussesx Downs, Inc.*, 104 A.D.2d 636, 480 N.Y. S.2d 16 (A.D.2nd 1984), the court did describe the action as one for the "negligent performance of a construction contract" with the defendant being "bound by *contract* to a duty of reasonable care and competence owed generally by construction companies, and was obligated to perform in a workmanlike manner." *Id.*, 480 N.Y.S.2d at 17–18 (emphasis added). The court in *Vitol Trading S.A. v. SGS Control Services*, 680 F.Supp. 559 (S.D.N.Y.1987) also employed language from tort law when describing the standard of care for work performed under a contract. *Id.* at 566–67. The language used by these courts was apparently a mix of legal terminology. For in both matters the courts based liability on the breach of a contract and applied a contractual measure of damages—showing that the claims being asserted by the plaintiff were actually considered to be ones for breach of contract. Therefore, these cases do not stand for the proposition that New York law recog-

nizes an independent tort cause of action for the negligent performance of a contract for services.

2. While recognizing the difference between contract and tort, New York courts have also noted that there is no clear demarcation between torts and breaches of contract. *See Rich v. New York Cent. & Hudson River R.R. Co.*, 87 N.Y. 382, 390 (1882). As stated in *Busch v. Interborough Rapid Transit Co.:*

The dividing line between breaches of contract and torts is often dim and uncertain. There is no definition of either class of defaults which is universally accurate or acceptable. In a general way, a tort is distinguished from a breach of contract in that the latter arises under an agreement of the parties; whereas, the tort ordinarily is a violation of a duty fixed by law, independent of contract or the will of the parties, although it may sometimes have a relation to obligations growing out of or coincident with a contract, and

As a general rule, however, the breach of a contract is *not* actionable in tort in the absence of special additional allegations of wrongdoing which amount to "a breach of a duty distinct from, or in addition to, the breach of a contract" *North Shore Bottling Co., Inc., v. C. Schmidt and Sons, Inc.*, 22 N.Y.2d 171, 179, 292 N.Y.S.2d 86, 92, 239 N.E.2d 189 (Ct.App.1968) (citing *Rich v. N.Y. Cent. & H.R. R.R. Co.*, 87 N.Y. 382, 398); *see Charles v. Onondaga Community College*, 69 A.D.2d 144, 418 N.Y.S.2d 718, 720 (A.D.4th 1979); *Luxonomy Cars, Inc. v. Citibank, N.A.*, 65 A.D.2d 549, 408 N.Y.S.2d 951, 954 (A.D.2nd 1978); *Albermarle Theatre v. Bayberry Realty Corp.*, 27 A.D.2d 172, 176, 277 N.Y.S.2d 505, 511 (A.D.1st 1967), or as recently stated by the Court of Appeals:

> It is a well-established principle that a *simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated* .... This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.

*Clark–Fitzpatrick v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656–57, 516 N.E.2d 190 (Ct.App.1987) (citations omitted, emphasis added). The allegations in the complaint reveal that the relationship between the plaintiffs and ITT was by and large governed by contract and that ITT's performance, according to the plaintiffs, constituted a breach of that contract. Moreover, when citing the general proposition that a simple breach of a contract is not actionable as a tort, New York courts generally do not distinguish between contracts for goods and contracts for services.

(2) *Transforming Contract Into Tort.* ITT relies heavily upon *Clark–Fitzpatrick Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (Ct. App.1987), as further support for their position that the plaintiffs are impermissibly attempting to transform a contract action into one sounding in tort. *Clark–Fitzpatrick* arose out of a major track improvement project on a branch of the Long Island Railroad. Plaintiff, who was the construction contractor, asserted claims sounding in breach of contract, quasi contract, fraud, negligence and gross negligence against the railroad, contending that the defendant provided flawed engineering designs, failed to obtain necessary properties, and failed to locate and move various utility lines that interfered with construction— all causing the plaintiff damages. *Id.* at 385–86, 521 N.Y.S.2d at 654, 516 N.E.2d at 191–92. The written contract between the parties provided comprehensive engineering specifications which instructed the plaintiff on how to proceed with construction, detailed applicable terms and conditions, and specifically provided for design changes as well as adjustments in compensation for any change. *Id.* at 385, 389, 521 N.Y.S.2d at 654, 656, 516 N.E.2d at 191–92, 192.

The court granted the defendant's motion to dismiss the negligence claims. In so holding the Court of Appeals stated:

> Here, plaintiff has not alleged the violation of a legal duty independent of the contract. In its cause of action for gross negligence, plaintiff alleges that defendant failed to exercise "due care" in designing the project, locating utility lines acquiring necessary property rights and informing plaintiff of problems with the project before construction began. Each of these allegations, however, is merely a restatement, albeit in slightly different language, of the "implied" contractual obligations asserted in the cause of action for breach of contract.... Moreover, the damages plaintiff allegedly sustained as a consequence of defendant's violation of a "duty of due care" in designing the project were clearly within the contemplation of the written agreement, as indicated by the design change

---

frequently the same facts will sustain either class of action.
187 N.Y. at 391, 80 N.E. at 198. *See also MacDonald v. Clinger,* 84 A.D.2d 482, 446 N.Y.S.2d

801, 804–05 (A.D.4th 1982); *Charles v. Onondaga Community Coll.,* 69 A.D.2d 144, 146, 418 N.Y.S.2d 718, 720 (A.D.4th 1979).

and adjusted compensation provisions of the contract. *Merely charging a breach of a "duty of due care", employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim. Id.* at 389–90, 521 N.Y.S.2d at 656–57, 516 N.E.2d at 192–93 (citations omitted).

In *Board of Educ. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987), also relied upon by ITT, a school board brought suit against a general contractor and an architect for the breach of a contract concerning the construction of a roof. The general contractor was successful in having the claims against it dismissed. Thereafter, the architect filed a third-party claim against the general contractor seeking, among other things, contribution. In granting the general contractor's motion to dismiss the third-party claim, the Court of Appeals held that New York's contribution statute only permitted contribution among joint tortfeasors and not between two parties whose "potential liability to a third party is for economic loss resulting only from a breach of contract." *Id.* at 24, 523 N.Y.S.2d at 476, 517 N.E.2d at 1361–62. Significantly, the court dismissed the architect's contention that it was entitled to seek contribution under the statute because the plaintiff school board would be "permitted to argue in its primary action that [the architect] breached a 'duty of due care' in performing the terms of the contract." *Id.*

The Court, citing *Clark–Fitzpatrick,* determined that the School Board would not be able to transform its breach of contract claim into a tort claim merely by "employing language familiar to tort law." *Id.* This was so because the school board sought "only pecuniary damages' resulting from the defective condition of the roof. No legal duty independent of [the architect's] contractual obligations to supervise construction and apprise the School Board of defects is claimed to have been breached." *Id. See also Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 899 (2nd Cir.1980) ("Where the conduct alleged breaches a legal duty which exists 'independent of contractual relations between the parties' a plaintiff may sue in tort. . . . If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort.") (citations omitted).[3]

The negligence claims in the complaint read as though they were an afterthought to the cause of action for breach of a contract for the fabrication and erection of piping. Most of the allegations focus on the contract, the contractual performance, and the breach of contractual obligations. In their negligence cause of action the plaintiffs state that "ITT Grinnell owed plaintiffs a duty to use ordinary care in performance of piping work at NMP2. In the ways described above, ITT Grinnell's

**3.** Further support for ITT's position that the negligent performance of contractual services is not actionable in tort is found in *Olmeca, S.A. v. Manufactures Hanover Trust Co.,* 629 F.Supp. 214 (S.D.N.Y.1985). There the court dismissed a depositor's negligence cause of action against a bank in a situation where an implied contract between the parties was found to exist. "Where the contractual relationship of the parties defines the rights of each, the breach of that contract does not result in a 'wrong' which is separately actionable." *Id.* at 223. The relationship between a bank and a depositor was held to be purely contractual. There was no duty independent of the contract obligation upon which a tort claim could be based. *See also Wexselblatt v. Bank of Boston Int'l,* 666 F.Supp. 513, 517 (S.D.N.Y.1987) (same). *Luxonomy Cars, Inc. v. Citibank, N.A.,* 65 A.D.2d 549, 408 N.Y.S.2d 951, 954 (A.D.2nd 1978) (tort claims against bank by

debtor/depositor dismissed because plaintiff does "no more than assert violations of a duty which is identical to and indivisible from the contract obligations which have allegedly been breached"). Similarly in *Papa v. New York Telephone Co.,* 72 N.Y.2d 879, 532 N.Y.S.2d 359, 528 N.E.2d 512 (Ct.App.1988) the plaintiff sued the phone company, in both contract and tort, to recover damages for loss of profits due to the defendant's failure to print an advertisement. The Court of Appeals affirmed the lower court's dismissal of the contract claim, agreeing that no contract had been formed. The court further held that the dismissal of the tort claim was proper because "no duty existing independent of the alleged contract, the breach of which would constitute negligence, was placed." *Id.* at 880, 532 N.Y.S.2d at 360, 528 N.E.2d at 513 (Citing *Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co.,* 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656–57, 516 N.E.2d at 192–193 (Ct.App.1987)).

work fell below the standard of care exercised by piping contractors." Complaint, para. 155. The operative language of plaintiffs' claim for gross negligence states simply that "ITT Grinnell's performance fell so far below the standard of care exercised by piping contractors, and evidenced such disregard for the rights of others that it committed gross negligence in it work on NMP2." Complaint, para. 158. It would appear that the plaintiff is using language familiar to the law of tort when describing the breach of a contract. Such a transmogrification is generally prohibited by the courts of New York.

(3) *Nature of Contract.* The Court of Appeals in *Board of Education v. Sargent, Webster, Crenshaw & Folley,* also addressed the issue of whether the court should "create a common-law right of contribution in contract actions." *Id.* at 29, 523 N.Y.S.2d at 479, 517 N.E.2d at 1365. In declining to create such a rule, the court determined that the better course was to restrict parties to the remedies found in a contract. This was so because:

> Parties to a contract have the power to specifically delineate the scope of their liability at the time the contract is formed. *Thus, there is nothing unfair in defining a contracting party's liability by the scope of its promise as reflected by the agreement of the parties. Indeed, this is required by the very nature of contract law, where potential liability is determined in advance by the parties.*

*Id.* at 29, 523 N.Y.S.2d at 479, 517 N.E.2d at 1365 (emphasis supplied). Thus, the nature of New York contract law would also lend support to ITT's position that a plaintiff should, in most circumstances, be limited to its contractual remedies.

Moreover, the distinction between contract and tort is important due to the availability of different remedies,[4] procedural mechanisms, limitations periods, venues, and burdens of proof.[5] It is normally to a

---

**4.** Under New York law there are important differences between the remedy provided for a breach of contract and that which is available for an action in tort. A contractual remedy "seeks to provide the parties with the benefit of their bargain. It is, in essence, a remedy designed to enforce the agreement express or implied, of the parties and to place them, should one of the parties fail to perform in accordance with the agreement, in the same position they would have been had the agreement been performed." *Martin v. Julius Dierck Equipment Co.,* 43 N.Y.2d 583, 589, 403 N.Y.S.2d 185, 188, 374 N.E.2d 97 (Ct.App.1978). On the other hand a tort cause of action sounding in negligence "seeks to provide a remedy for an individual injured because of another's violation of an obligation imposed not by contract, but by law. It does not attempt to afford the injured party the benefit of any bargain, but rather endeavors to place him in a position he occupied prior to his injury. In other words, [a] negligence ... cause of action seek[s] to make the injured party 'whole.'" *Id.,* 403 N.Y.S.2d at 188, 374 N.E.2d at 100.

**5.** This point was summarized in Prosser and Keeton, *The Law of Torts* 664–66 (5th Ed.1984):

> Where on the facts either an action in contract or one in tort is open to the plaintiff, his choice may have important consequences. Some considerations may lead the plaintiff to prefer action on the contract. A contract may lead to strict liability for failure to perform, as in the case of a physician's undertaking to cure his patient, where the tort action would require

proof of negligence or some other wrongful conduct. A shorter statute of limitations may bar the tort action, or it may not survive the death of one of the parties. Some immunities, such as those of municipal corporations or charities may prevent recovery in tort, but not in contract. The damages recoverable on the contract may sometimes be greater, to the extent they give the plaintiff the benefit of the bargain made, rather than compensation for a loss. A contract claim may be assignable where a tort claim is not, or an inferior court may have jurisdiction over it, or the venue may offer more latitude, or the contract suit may open the way to remedies such as attachment or summary judgment, or be available as a set-off or counterclaim where the other remedy would not....

> Generally speaking, the tort remedy is likely to be more advantageous to the injured party in the greater number of cases, if only because it will so often permit the recovery of greater damages ... [damages] may be limited by the contract itself, where a tort action might avoid the limitation. In contract action[s] ... punitive damages are not allowed, and there can ordinarily be no recovery for mental suffering. In the tort action the only limitations are those of "proximate cause," and the policy which denies recovery to certain types of interests themselves.

> The tort action may offer other advantages. It may permit recovery for wrongful death, for which a contract action normally will not lie. It may be open where the contract fails for lack of proof, for uncertainty, for illegality, for want

plaintiff's advantage to get both tort and contract claims before the trier of fact when "the same facts will sustain either class of action," *Busch v. Interborough Rapid Transit Co.*, 187 N.Y. at 391, 80 N.E. at 198, because access to multiple theories of recovery may permit the plaintiff to avoid legal or remedial pitfalls which may apply to one cause of action but not another. This is also a reason why courts have often been wary of allowing a party to escape the strictures of a contractual bargain through the assertion of a tort cause of action in addition to a contract claim.

(4) *Economic Loss.* As already noted, in *Consolidated Edison Co. v. Westinghouse Elec. Corp.*, 567 F.Supp. 358 (S.D.N.Y. 1983), the court specifically held that "a suit for negligent performance of contractual duties is clearly available where only economic injury is alleged." *Id.* at 364. The holding of *Consolidated Edison* with respect to economic loss is in direct conflict with more recent decisions which hold that New York law does not recognize a negligence cause of action when economic loss alone is involved.[6] In *Long Island Lighting Co. v. Transamerica Delaval*, 646 F.Supp. 1442 (S.D.N.Y.1987), the plaintiff asserted claims sounding in contract and tort, among others, against the corporation which provided LILCO with four defective diesel generators. The complaint alleged causes of action for negligent failure to warn, negligent failure to perform services under a contract, and negligent design, manufacture and testing of the diesels. The court dismissed the negligence claims on the basis that the complaint could only

be read as alleging claims for economic loss, stating:

> An action in negligence ... seeks to redress injuries to persons or property. When compensation is sought for purely economic loss, the usual means of redress is an action for breach of contract, to give the parties the benefit of their bargain.... "New York law holds that a negligence action seeking recovery for economic loss will not lie."

*Id.* at 1457 (quoting *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2nd Cir.1984)); *see also Antel Oldsmobile–Cadillac v. Sirus Leasing*, 101 A.D.2d 688, 475 N.Y.S.2d 944, 945 (A.D.4th 1984) (negligence claim dismissed because "recovery is sought not for physical damage to person or property resulting from an accidental cause, but for 'economic damages' only") *see also Mid–Hudson Mack v. Dutchess Quarry & Supply*, 99 A.D.2d 751, 471 N.Y.S.2d 664, 666 (A.D.2d 1984) ("The law is clear in this state that economic loss (e.g., the cost of repair and consequential damages) may not be recovered in an action predicated on negligence"). This line of cases gives further support to ITT's motion to dismiss plaintiffs' tort claims since it would appear that the complaint in the present action seeks damages for economic loss alone as opposed to damages for injury to person or property.

(5) *Cases Distinguished.* The plaintiffs cite a number of cases which may be distinguished on the basis that the negligent performance of contractual services caused injury to a person who was not a party to the contract,[7] or where the defendant is not

---

of consideration, or because of the statute of frauds or the parol evidence rule. It may sometimes avoid some defenses, such as infancy or a discharge in bankruptcy; and it may avoid some counterclaims. It may avoid the necessity of joining several defendants, or the application of a favorable rule under the conflict of laws. (Citations omitted).

**6.** The term "economic loss" or "economic damage" in this context refers to damages which are sought by a plaintiff *other* than for "physical damage to person or property resulting from an accidental cause." ... or, in other words, "[w]hen damage suffered by a plaintiff is the result of a non-accidental cause, such as deterio-

ration of breakdown of the product itself, the injury is properly characterized as 'economic loss.'" *Antel Oldsmobile–Cadillac v. Sirus Leasing*, 101 A.D.2d 688, 475 N.Y.S.2d 944, 945 (A.D.4th 1984); see also *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2nd Cir.1984) ("when the plaintiff's claim is simply that the product did not function properly, requiring its owner to incur costs of repair, then the only injury claimed is one for economic loss").

**7.** *See e.g., Milau Assocs., Inc. v. North Avenue Development Corp.*, 42 N.Y.2d 482, 485, 398 N.Y. S.2d 882, 883, 368 N.E.2d 1247, 1248 (Ct.App. 1977) (trial court had permitted suit sounding in

simply a contractual party, but a professional of some sort who is subject to an action for the tort of professional malpractice independent of or in addition to claims for breach of contract.[8] There have been numerous other cases, cited by the plaintiffs, in which the courts of New York found valid tort causes of action to exist independent of a contract. Such tort claims are cognizable against a party to a contract who intentionally engages in a scheme to destroy the value of the plaintiff's property, *see North Shore Bottling Co., Inc. v. Schmidt & Sons, Inc.,* 22 N.Y.2d 171, 179–80, 292 N.Y.S.2d 86, 92, 239 N.E.2d 189, 193 (Ct.App.1968); *Albermarle Theatre Inc., v. Bayberry Realty Corporation,* 27 A.D.2d 172, 177, 277 N.Y. S.2d 505, 511 (A.D.1st 1967) (same), or makes knowingly false representations, *Meyers v. Waverly Fabrics,* 65 N.Y.2d 75, 80, n. 2, 489 N.Y.S.2d 891, 894 n. 2, 479 N.E.2d 236, 239 n. 2 (Ct.App.1985); *see also Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 898–99 (2nd Cir.1980) (tort duty independent of the contract not to engage in fraudulent representations), or where the long-standing relationship between contractual parties amounted to a fiduciary relationship whose breach could be actionable in tort, *Penato v. George,* 52 A.D.2d 939, 942, 383 N.Y.S.2d 900, 904–05 *appeal dismissed,* 42 N.Y.2d 908, 397 N.Y.S.2d 1004, 366 N.E.2d 1358 (2nd Dept.1976), or for tortious interference with the performance of another contract, *S & S Hotel Ventures Ltd Partnership v. 777 S.H. Corp.,* 108 A.D.2d 351, 352–55, 489 N.Y.S.2d 478, 480–81 (Ct.App.1985).

The problem with plaintiffs' argument is that none of these cases stand for the general proposition that there is always a

tort cause of action for the negligent performance of contractual services. At oral argument on this motion plaintiffs stated on the record that they have not alleged a fraud claim against ITT. Trans. at 19. There is no allegation in the complaint, as there is against Stone & Webster Engineering Corporation, that ITT committed professional malpractice. When the court asked plaintiffs why they did not sue for professional malpractice, they responded in effect, that it was unnecessary because of New York's well established cause of action in tort for the negligent performance of contractual services. Trans. at 20–22. Also at oral argument the plaintiffs admitted that they were not pressing a claim for the breach of a fiduciary duty. Trans. at 24. And, notwithstanding language in the complaint and plaintiffs memorandum of law to the contrary, the plaintiffs' do not claim that they have a cause of action against ITT on behalf of society at large due to ITT's breach of some "social" duty. Trans. at 25–26.

This court rejects plaintiffs' assertion that New York law always recognizes a tort for the negligent performance of services under a contract. To the extent that plaintiffs base the negligence claims on this legal foundation, the claims are dismissed. The mere fact that the alleged breach involved a contract that encompassed the performance of services does not suffice as special additional allegations of wrongdoing which amount to "a breach of a duty distinct from, or in addition to, the breach of a contract." *North Shore Bottling Co., Inc. v. C. Schmidt and Sons, Inc.,* 22 N.Y.2d 171, 179, 292 N.Y.S.2d 86, 92, 239 N.E.2d 189, 193 (Ct.App.1968); *see*

---

negligence to be asserted by commercial tenants against a general contractor and subcontractor for water damage which resulted from a burst pipe in sprinkler system—there was no contract between the parties); *Credit Alliance Corp. v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 550, 493 N.Y.S.2d 435, 445, 483 N.E.2d 110, 120 (Ct.App. 1985) (discusses circumstances in which an accountant may be held liable to noncontractual parties who rely to their detriment on inaccurate financial reports prepared by the accountant).

8. *See Paver & Wildfoerster v. Catholic High School Ass'n,* 38 N.Y.2d 669, 672, 382 N.Y.S.2d 22, 23, 345 N.E.2d 565, 567 (Ct.App.1976) (architect who performs defective services under a construction contract may be sued for both breach of contract and professional malpractice); *Sears, Roebuck & Co. v. Enco Assos., Inc.,* 43 N.Y.2d 389, 395–96, 401 N.Y.S.2d 767, 770, 372 N.E.2d 555, 557–58 (Ct.App.1977) (plaintiff contracted with architects to design, engineer and supervise the construction of parking ramps. The plaintiffs asserted claims both for contract and professional malpractice).

*Clark–Fitzpatrick v. Long Island Rail Road Co.,* 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656–57, 516 N.E.2d 190, 192–193 (Ct. App.1987).

**B. Relationship of Trust and Confidence**

 Plaintiffs have asserted, in the alternative, that they will be able to marshall facts through discovery which will show that ITT and the plaintiffs had a relationship of "trust and confidence" out of which arose an independent tort duty to act with due care. The remaining issue before this court, therefore, is the narrow question of whether a special relationship of trust and confidence, with a concomitant duty of due care, has arisen as a result of the longstanding contractual relationship between the plaintiffs and ITT. The classic statement of the circumstances under which such a tort duty of due care may exist independent of the contract was set forth in *Rich v. New York Central & Hudson R.R. Co.,* where the Court of Appeals stated that such a duty:

> may arise out of certain relations of trust and confidence, inherent in the nature of the contract itself [or] may spring from extraneous circumstances, not constituting elements of the contract as such, although connected with and dependent upon it, and born of that wider range of legal duty which is due every man to his fellow, to respect his rights to property and person and refrain from invading them by force or fraud.

87 N.Y. 382, 398 (Ct.App.1882).

The Court in *Apple Records, Inc. v. Capital Records, Inc.,* 137 A.D.2d 50, 55, 529 N.Y.S.2d 279, 281–283 (A.D.1st 1988) "grappled with the difficulty of formulating a precise test to determine under what circumstances a party to a contract may be held liable in tort to another party thereto as a result of some clash in the contractual relationship." *Id.,* 529 N.Y.S.2d at 281. There, former members of the "Beatles,"

along with a record company they owned, brought suit alleging numerous claims sounding in both tort and contract against Capital Records, Inc. In the course of holding that the plaintiffs had stated cognizable claims for fraudulent concealment and fraudulent representation, in addition to breach of contract, the court reviewed the considerations generally taken into account when deciding whether a tort duty of care exists independent of contractual obligations. According to the *Apple Records* court, the proper "focus is on whether a noncontractual duty was violated; a duty imposed on individuals as a matter of social policy, as opposed to those imposed consensually as a matter of contractual agreement." *Id.* 529 N.Y.S.2d at 282. A societally imposed duty of due care, the breach of which is actionable in tort, could arise *"when a special relationship of 'trust and confidence' exists between the contracting parties, (such as is typically found between bailor and bailee, lawyer and client, principal and agent, public carrier and passenger or innkeeper and guest)." Id.,* 529 N.Y.S.2d at 282.

The *Apple Records* court concluded that the extensive 26–year business relationship between the Beatles and the defendant record company created a relationship of trust and confidence with a concomitant duty of care independent of the contractual relationship. The breach of this duty by the defendant was actionable in tort even though a contract governed the relationship between the parties. *Id.,* 529 N.Y.S. at 283. Importantly, for a tort cause of action to exist in this context there was no need for a claim of professional malpractice, fraud, breach of fiduciary duty, or some intentional tort. *Id.; See e.g., Penato v. George,* 52 A.D.2d 939, 383 N.Y.S.2d 900, 904–05 (A.D.2nd) *appeal dismissed,* 42 N.Y.2d 908, 397 N.Y.S.2d 1004, 366 N.E.2d 1358 (Ct.App.1976).[9]

---

**9.** In *Penato* the court described instances where the factual circumstances of a case could suggest the existence of an implied fiduciary relationship. The court stated:

"[A] fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal re-

The recent case of *Morse/Diesel, Inc. v. Trinity Indus. Inc.*, 859 F.2d 242 (2nd Cir. 1988), also presents a good example of how courts have distinguished situations in which a relationship of "trust and confidence" exists from those where it does not. In *Morse/Diesel* a contractor brought suit solely for breach of contract against two subcontractors. Thereafter, the two defendant subcontractors each brought third-party actions against three other subcontractors asserting, among other things, a cause of action for negligence. The gist of the negligence claim was that the third-party subcontractors negligently performed their contractual responsibilities to the *contractor*, and in so doing, economically injured the defendant subcontractors. There was no contract in existence between any of the subcontractors. *Id.* 244–45. The lower court denied the motion by the third-party subcontractors to dismiss the tort claims on the basis that there was a sufficiently close relationship between the subcontractors to create an independent duty of care; the breach of this duty being actionable in tort. *Id.* at 246. The Second Circuit reversed. A key element of the appellate court's rationale was that the third-party defendant subcontractors did not serve in a supervisory capacity, but rather, had "discrete, circumscribed roles in the overall construction project." *Id.* at 248. There was not, the court reasoned, a relationship between the subcontractors which was sufficient to create an independent tort duty of care. *Id.* at 248.

The Court in *Morse/Diesel* was, however, careful to distinguish two New York cases which held that one construction subcontractor could assert tort claims against another subcontractor for breach of a duty of due care in the absence of a contract. The Second Circuit read both *James McKinney & Son, Inc. v. Lake Placid 1980 Olympic Games, Inc.*, 92 A.D.2d 991, 992, 461 N.Y.S.2d 483, 486 (A.D.3rd 1983) (subcontractor permitted to bring a negligence action against the project manager, even though there was no contractual privity, because project manager was required to manage, supervise and inspect construction, review engineering drawings and design, and identify defects in the design, to the extent that a duty of due care inured to the benefit of the subcontractor), *modified on other grounds,* 61 N.Y.2d 836, 473 N.Y.S.2d 960, 462 N.E.2d 137 (Ct.App.1984), and *Northrup Contracting, Inc. v. Village of Bergen*, 139 Misc.2d 435, 527 N.Y.S.2d 670 (Sup.Ct. Monroe Co.1986), *modified on other grounds*, 129 A.D.2d 1002, 514 N.Y.S.2d 306 (A.D.4th 1987) (same), as standing for the general proposition that, when one subcontractor is placed in the role of *supervisor or manager* with respect to another construction subcontractor, the managing subcontractor has a duty to act with due care with respect to the subcontractors it supervises. *See Morse/Diesel,* 859 F.2d 242 at 247–48. The position of supervisor, under the facts of those cases, was one of trust and confidence with respect to the servient subcontractors—creating a duty of due care the breach of which was actionable in tort.

In the present case plaintiffs assert that the contractual relationship lasted over five years and involved a price tag of approximately $300 million. There are allegations that ITT was entrusted with QA/QC programs which were vital to the success and safety of the overall project. Moreover, plaintiffs maintain that ITT served as plaintiffs' delegate with respect to reporting and disclosure responsibilities to the Nuclear Regulatory Commission and that ITT's failure to perform this job resulted in the issuance of a costly "stop-work" order. While vested with these responsibilities, ITT allegedly falsified weld radiographs, used unapproved welding procedures, and threatened to dismiss any QA/QC personnel who reported problems to anyone not connected with ITT.

Given these factual assertions it is not yet possible for this court to discern wheth-

---

lations which exist whenever one man trusts in, and relies upon another.... Such a relationship might be found to exist, in appropriate circumstances, between close friends ...

or even where confidence is based upon prior business dealings."
52 A.D.2d 939, 383 N.Y.S.2d at 904–05 (citations omitted).

er the plaintiffs will be able to carry the heavy burden of showing that there existed a relationship of trust and confidence, between ITT and the plaintiffs, sufficient to create an independent tort duty of care. In *New York v. Bettigole,* 57 A.D.2d 797, 394 N.Y.S.2d 642 (A.D.1st 1976) the court addressed a situation where a defendant moved to dismiss certain tort claims on the basis that its liability, if any, was for breach of contract only. The court first noted that the improper performance of work under a contract could *sometimes* be actionable in tort. Rather than make a decision on the pleadings alone, the court decided to permit the action to continue so that a determination on whether there existed a tort cause of action could be made on a more complete factual record. The court reasoned that:

> [W]hichever way this motion is decided, all parties will still be in the case and the entire case will still have to be gone into. In those circumstances, it is better that the adjudication of the rights of the parties be made on a consideration of the underlying facts rather than on the insufficiency of the pleadings.

*Id.* at 797, 394 N.Y.S.2d at 643. Plaintiffs rely on this case to support their argument that, at a minimum, a decision on this matter should be deferred to a time when the facts of this case have been more completely threshed out. This court agrees. At the current stage of the proceedings this court cannot say that plaintiffs will be unable to prove any set of facts supporting their negligence claims based on a trust and confidence relationship and a concomitant duty of care arising therefrom.

Accordingly, defendants' motion to dismiss is granted as to all tort claims alleged against defendant ITT with the exception of plaintiffs' claim based upon the breach of a duty of due care arising from an alleged relationship of trust and confidence.

IT IS SO ORDERED.